**In re Nathaniel L. CALLENDER, Jr., Debtor.**

**Bankruptcy No. 1–88–04076.**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 8, 1989.

Terence J. Southard, Cincinnati, Ohio, for debtor.

John R. Cummins, Cincinnati, Ohio, for Credit Union.

William R. Schumacher, Trustee, Cincinnati, Ohio.

## DECISION and ORDER

BURTON PERLMAN, Chief Judge.

In this Chapter 13 case, debtor listed The Cincinnati Postal Employees Credit Union as an unsecured creditor. Debtor's amended plan provided for 70% payment to unsecured creditors. Debtor's original plan provided for special treatment only for real estate lenders, who were to be paid outside the plan. Prior to the hearing on confirmation, on December 22, 1988, debtor filed an amended plan which changed the original plan only in that it provided for payment to the Credit Union outside the plan. At the hearing on confirmation, the trustee did not recommend confirmation of the amended plan, contending that it provided for discriminatory treatment of an unsecured creditor, the Credit Union. Debtor then, at the confirmation hearing, withdrew the amended plan, and we confirmed the original plan, in effect, sustaining the objection of the trustee to the amended plan. There was no objection to confirmation. On January 6, 1989, counsel for the Credit Union forwarded to debtor's counsel for transmission to the debtor, a letter addressed to the debtor which said:

I am an attorney writing you on behalf of your credit union.

As you will recall, your bankruptcy plan listed your credit union as unsecured. This means that the credit union will suffer a loss.

Please understand that your credit union has a policy stating that *all services shall be terminated for any person who causes the credit union a loss.*

As a possible solution, you might want to consider contacting your attorney and having him place the Cincinnati Postal Employees Credit Union in a special class of unsecured creditors receiving 100% of their claims. That way, the credit union would consider you for future services just as it would any other member in good standing.

If you have any further questions concerning this matter, do not hesitate to contact me at our Cincinnati office, Ann Martin at the credit union (381–8600), or your attorney.

The Credit Union under date January 25, 1989, addressed to debtor's counsel a further letter requesting that counsel notify the debtor that "... as per our letter of January 6, 1989, we will be closing his share and share draft account on February 6, 1989."

Debtor then filed Motion for Contempt, asserting therein that the Credit Union had "... taken steps to close debtor's account in retaliation of debtor's petition for relief under Chapter 13." We issued a temporary restraining order and thereafter held a hearing on the motion. The only evidence adduced at the hearing was that of the president of the Credit Union, Ann Martin. She is a full time employee of the Credit Union and testified that it was the policy, contained in the by-laws of the Credit Union, that anyone who causes loss to the Credit Union is no longer eligible for the services of the Credit Union or membership in the Credit Union. In respect to the advantage to one having the use of the Credit Union of direct deposit of his paycheck, she testified that the same service was available from other financial institutions, as well as the Credit Union.

Two provisions of the Bankruptcy Code are pertinent here, § 362(a)(6), which imposes a stay against any act to collect a pre-filing claim, and § 525(b)(3), which forbids a "private employer from discriminating 'with respect to employment' against a debtor because he has not paid a dischargeable debt."

1. Section 362(a)(6). The actions of the Credit Union may be simply stated, that it notified debtor that it was going to terminate its relationship with debtor because the treatment of the Credit Union under debtor's Chapter 13 plan would result in a loss to the Credit Union and the Credit Union informed debtor that he could avoid this termination of services if he repaid the debt in full. The pertinent statutory language provides that the automatic stay of § 362 applies to:

(6) any act to collect, assess, or recover a claim against the debtor that arose

before the commencement of the case under this title;

A question of statutory interpretation is here presented. The question is whether the notification and suggestion by the Credit Union amounted to an "act to collect". We agree with, and accept the view of the Third Circuit Court of Appeals that it does not. *In re Brown*, 851 F.2d 81, 84 (3rd Cir.1988). There the Court held that a letter very similar to that sent to debtor's counsel by the Credit Union in the present case was "mildly worded", not coercive, and therefore not violative of the statute.

■ 2. Section 525(b)(3). This Code section provides:

**§ 525. Protection against discriminatory treatment.**

\* \* \* \* \* \*

(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

\* \* \* \* \* \*

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

This portion of § 525 of the Bankruptcy Code was adopted in 1984 to extend the prohibition against discrimination theretofore provided for against governmental units (§ 525(a)) to "private employers." Here, it is not alleged that debtor was an employee of the Credit Union, the creditor against whom relief is sought. Nevertheless, we hold that the actions of the Credit Union are subject to § 525(b), because in order to interpret the intended scope of this clause, it is necessary to pay attention to the further language therein, "discriminate with respect to employment." Credit unions, as is true for the Credit Union here involved, commonly have an affiliation with a particular employer, in this case the United States Postal Service. Their services are offered to, and limited to, employees of a particular employer. The term "employer" in the present context should be given a broad reading, not bound by conventional state law concepts. *In re McNeely*, 82 B.R. 628 (Bankr.S.D.Ga.1987). Where the right to access to such services is denied an employee of that employer, plainly such action is discriminatory. We must address the question of whether such discrimination is barred by § 525(b).

We are compelled to conclude that it does not. The key fact which requires this conclusion is that it is not only those employees of the Postal Service who cause loss to the Credit Union by filing bankruptcy who are deprived of the services of the Credit Union, but employees who cause loss by any means who are so disadvantaged. In such a fact configuration, a violation of § 525 does not occur. *In re Norton*, 867 F.2d 313, 317 (6th Cir.1989); *In re Brown*, 851 F.2d 81, 86 (3rd Cir.1988) (holding no violation where "policy applied to all defaulting debtors, whether or not the debts were discharged in bankruptcy.").

Debtor's motion for contempt is denied. The temporary restraining order entered February 1, 1989 is vacated.

So Ordered.