**In re Nathan Leon GUINN, Debtor.**

**Bankruptcy No. 89–06540 (7).**

United States Bankruptcy Court,
N.D. Alabama.

June 30, 1989.

---

Douglas Ghee, Anniston, Ala., for debtor.

Harry P. Long, Anniston, Ala., for movant.

FINDINGS AND CONCLUSIONS BY THE COURT ON CREDIT UNION'S MOTION FOR RELIEF FROM STAY PROVIDED FOR BY 11 U.S.C. § 362(a)

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction —*

The above-styled case was commenced by the voluntary petition of said debtor filed under title 11, chapter 7, United States Code, on May 5, 1989, and is pending before this Court under said chapter. On May 9, 1989, the clerk notified creditors of the filing of the petition and not to file proofs of claim at that time, because the debtor's schedules indicated no assets from which a dividend on claims could be paid.

AOD Federal Credit Union (hereinafter referred to as credit union), nevertheless, filed in this case four proofs of claim, designated by the clerk as claims 1 through 4, respectively. Claim numbers 1 and 3, for $1,299.57 and $4,759.65, respectively, contain statements that there is no security for the debt asserted. Claim number 2, in the amount of $3,320.45, states that this debt is secured by a 1982 model "Chevy Camaro," and there is attached a certificate of title for such a vehicle, showing the debtor to be one of the owners and the credit union to have a lien. Claim number 4, in the amount of $21,715.52, states that this debt is secured by a "real estate mortgage." Attached to claim number 4 are copies of what purport to be a mortgage note and a real estate mortgage executed by the debtor and his wife and dated April 19, 1989.

On May 24, 1989, the credit union filed in this case a motion which seeks relief from the automatic stay provided for by 11 U.S.C. § 362(a), so as to permit the credit union to enforce its interests in and to the debtor's real property, which is described in the mortgage. The attachments to proof of claim number 4 and to the credit union's motion show that the principal debt was a loan of $21,600.00, at 12.2% interest per year, payable in 300 monthly installments of $231.52 each, beginning May 28, 1989, and that, of the principal amount, $19,-742.16 was applied to a previous account of the debtor with the credit union.

The motion of the credit union avers that the debtor defaulted under the terms of the real estate mortgage and note by failing to pay the payments required thereunder and that the credit union's interest in the real property is not adequately protected. In

an answer to the motion, the debtor denies such default and denies that the credit union's interest is not adequately protected.

At a hearing upon the credit union's motion, on June 20, 1989, the credit union and the debtor were represented by legal counsel, but the trustee in bankruptcy did not appear and has taken no part in this contested matter. No evidence for or against the motion was introduced at the hearing, but the statements of counsel were to the effect that the debtor did not make the first payment to the credit union on the mortgage note, due May 28, 1989, that the debtor had tendered the payment, that the credit union had refused to accept the payment, and that the credit union's refusal was based upon a provision in its membership agreement with the debtor terminating the membership of any member who causes loss to the credit union and its contention that it was not required to accept installment payments from any person who owed it a debt and who was not a member of the credit union.

Upon this undisputed factual basis, the credit union's motion was submitted to the Court for a ruling as to whether the credit union was entitled to foreclose the mortgage or not. The Court concluded that the credit union was not entitled to foreclose the mortgage and announced that the credit union's motion for relief from the stay would be denied.

*Findings of Fact—*

The Court will take judicial notice of the proceedings in this case as they appear of record herein and are stated above. The Court will consider the statements of counsel at the hearing to be the equivalent of a stipulation of facts, which the Court finds therefrom to be as follows:

1. The credit union holds a mortgage note from the debtor and his wife, secured by a mortgage from the debtor and his wife on their real property;

2. The first payment due under the mortgage note, on May 28, 1989, was tendered by the debtor to the credit union but was refused by the credit union and, therefore, was not paid;

3. The credit union has suffered a substantial loss on the unsecured debts owed to it by the debtor and represented by its proofs of claim numbers 1 and 3, in the absence of any contention that there is some reasonable prospect for a dividend to be paid upon such claims in this case or that the debtor intends to reaffirm the debts or that the debts will not be discharged in this bankruptcy case; and

4. The debtor is no longer a member of the credit union by virtue of a provision in its membership agreement with the debtor to the effect that anyone who causes loss to the credit union ceases to be a member.

*Conclusions by the Court—*

Section 362(a) of title 11, from the provisions of which the credit union sought relief, in part, provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of— ..."

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ....

Additionally, in subsection (c) of section 362, there are provisions that this stay of an act against property of the estate continues until such property is no longer property of the estate and that the stay of any other act continues until an individual debtor in a chapter 7 case is granted a discharge.

Upon the granting of a discharge to a debtor in a chapter 7 bankruptcy case, section 524(a)(2) comes into play and provides that the discharge "operates as an injunction against the commencement or continuation of ... an act, to collect, recover or offset [a discharged debt] as a personal

liability of the debtor...." In subsection (c) of section 524, there are provisions which make unenforceable a nonconforming, so-called "reaffirmation agreement" —a new agreement made by the debtor with an old creditor, the consideration for which is an old and discharged debt.

For the purpose of the ensuing discussion, the Court will assume that upon the the commencement of this bankruptcy case by the debtor, the credit union lawfully could act under its membership agreement to terminate the debtor's credit union membership. See *In re Brown*, 851 F.2d 81 (3rd Cir.1988). The credit union's position in asserting that the debtor defaulted on the first mortgage note installment is that, after termination of the debtor's membership, the credit union had no obligation to maintain any membership privilege or service for the debtor, including the maintenance for the debtor of the loan secured by the real estate mortgage. The credit union proceeds from this proposition to the conclusion that it had no obligation to accept an installment payment of the debt and could, therefore, refuse the payment tendered by the debtor. The final step in the credit union's train of thought is that the payment being refused, no payment was made, and now the debt is in default, enabling the credit union to proceed to foreclose its mortgage on the debtor's real property.

If the credit union is entitled to foreclose its mortgage as to this debtor, aside from any question of its right to do so as against the debtor's wife, there does not appear to be any sufficient reason for continuing in effect a stay of the foreclosure, absent, as here, any contrary position by the trustee in bankruptcy. Leaving out bankruptcy questions, it appears to the Court that the credit union's progression from the termination of the debtor's credit union membership to the proposition that it may refuse the debtor's mortgage payments and foreclose the mortgage depends upon a very thin and leaky connection between the two points of argument.

■ The credit union's position that termination of the debtor's membership termi-

nates the debtor's contractual rights to repay the mortgage debt in installments is a non sequitur. The repayment rights stated in the mortgage note and mortgage are not included in the bundle called membership rights. The extension of the loan to the debtor and his wife doubtless was part and parcel of those membership rights. Once the loan was made, the terms of the repayment of the debt were fixed by the written note and mortgage contracts signed by the borrowers and accepted and acted upon by the lender. It is in words of fantasy that the credit union states that it is under no obligation "to maintain a loan for a nonmember." A correct wording of its earthly position is that it is under no obligation "to make a loan to a nonmember."

■ In the bankruptcy context, the credit union's position appears to be no more supportable. At this point, one should determine the reason or the goal for the credit union's actions. It appears inappropriate to attribute its actions to pure vindictiveness. It appears more likely that the membership provision, terminating the membership of anyone who causes loss to the credit union, is intended to discourage any such loss from whatever cause or failure, including the exercise of the member's right to file a bankruptcy petition. The cancellation of credit union membership for a person who elects to file a bankruptcy petition is, at least to some extent, against public policy. The credit union's enforcement of this provision and, particularly, its asserted right to foreclose upon a nonmember's mortgage which, otherwise, would not be in default appears to be an effort by the credit union to make of this debtor a "Chinese dissident" example, for the "benefit" of other member borrowers who might be having errant thoughts of taking bankruptcy. While the latter purpose may or may not be permissible, it is fatal to the credit union's motion for relief from the stay that the credit union's actions also may be interpreted as an effort to force this debtor to pay or to "reaffirm" all or part of the unsecured debts which he owes to the credit union and which may be expected to be discharged in this bankruptcy

case, without any reasonable prospect for the payment of a dividend upon the proofs of claim representing the two unsecured debts.

■ The mere cancellation of the debtor's membership privileges—such as maintaining an interest-bearing share account for the debtor or maintaining a checking account for the debtor—is not a withdrawal of privileges unique union membership and therefore not so valuable as to have sufficient clout as to be found coercive of the debtor to pay or to agree to pay a discharged debt. The asserted use of the membership-termination provision so as to prevent the debtor from being able to maintain payments on the real estate mortgage does have sufficient clout as to be coercive and thereby to deprive this debtor of the benefits of having the two unsecured debts discharged in this bankruptcy proceeding. Such coercion is stayed by the provision of section 362(a) and will be forbidden under section 524(a) upon the granting of a discharge to the debtor, there being no indication that progress of the case to the point of discharge of the debtor will meet any effective interference. *Cf. In re Olson*, 38 B.R. 515 (Bankr. N.D.Io.1984); *Green v. Natl. Cash Register Co. CI Corp. System*, 15 B.R. 75 (Bankr. S.D.Oh.1981).

Apparently this type of membership-cancellation provision in credit union membership agreements has some general prevalence. It was the object of judicial consideration in *In re Brown*, 851 F.2d. 81 (3rd Cir.1988); *In re Callender*, 99 B.R. 378 (Bankr. S.D.Oh.1989); and *In re Green*, 15 B.R. 75 (Bankr. S.D.Oh.1981). In each case, however, the credit union, as in the case here, was not content to cancel the debtor's membership and stop at that.

In the *Brown* case, the credit union wrote directly to the debtor, in part, as follows:

It is the Credit Union's policy to deny future services to members when any portion of the debt is discharged in bankruptcy. However, if the obligation is reaffirmed with court approval, you would remain eligible for services as though the bankruptcy had not occurred.

851 F.2d 81, 82.

■ The court spoke of the letter as being "mildly worded" (851 F.2d 81, 84) and cited with approval the Ninth Circuit's statement in *Morgan Guar. Trust Co. v. American Sav. & Loan*, 804 F.2d 1487 (9th Cir.1986) (*dictum*), "that the language and purposes of section 362(a) do not bar mere requests for payment unless some element of coercion or harassment is involved." 804 F.2d 1487, 1491. Neither court indicates any compulsion such as this Court would have *not to ignore* the plain language and plain meaning of the language of section 362(a)(6), which stays "any act to collect" a prepetition claim. Surely the word "collect" is not to be given a narrow, legal-action type of meaning. The injunctive effect given by section 524(a) to an order of discharge is set out in similar language and forbids "an act[,] to collect" a discharged debt "as a personal liability of the debtor."[1] Contradictory of the two court views, is the following legislative explanation of section 362(a)(6):

Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bank-

---

1. Compare the congressional statement below, as to the intent and purpose of section 524(a), with the Third and Ninth Circuit views of permissible creditor efforts to collect prepetition debts, notwithstanding section 362(a)(6):

The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment,

threats of repossession, and the like. The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 USC 524(d), and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365–66 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5866, 6321, 6322.

ruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisicated creditors.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 50–51 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5836, 5837, 6298.

In the *Callender* case, the credit union threatened to close the debtor's "share and share draft account," after having written to the debtor suggesting that the debtor's chapter 13 composition plan be modified to provide for a 100% payment of only its unsecured claim, a provision previously rejected by both the trustee and the court. See section 1322(b)(1). The letter was sent to the debtor's attorney to be forwarded to the debtor. The bankruptcy court found no violation of section 362(a)(6) or of the antidiscrimination provisions of section 525(b), citing *In re Norton*, 867 F.2d 313 (6th Cir.1989), and the "mildly worded" letter language from the *Brown* case (851 F.2d 81, 84).

In the earlier *Green* case, the credit union had attempted to include in a "reaffirmation agreement" on the debtor's automobile debt an additional unsecured debt owed to it by the debtor. After repossessing her automobile, the credit union obtained payment by the debtor of the unsecured debt and expenses of repossession of the vehicle and furnished the debtor with a "reaffirmation agreement" on the secured debt only. The bankruptcy court correctly characterized the creditor's conduct as a violation of the provisions of both section 362(a) and section 524(a).[2]

In some of the cases referred to, the creditor has attempted to justify its debt-collection efforts by stating that it shuns equally any member who causes it loss—bankrupt or nonbankrupt.[3] This may carry some weight in regard to an alleged violation of the antidiscrimination provisions of section 525(b),[4] but it has no relevance here. A creditor's consistent policy to collect all debts owed to it, whether owed by a bankruptcy petitioner or other debtor, would be nondiscrimatory, but as applied to this debtor and two dischargeable, unsecured debts, the policy would violate the injunctive provisions of both section 362(a)(6) and of section 524(a).

Even the least sensitive notion of good faith dealings would condemn an effort of a creditor to put a debtor in default on a debt by refusing the debtor's payment; and this Court is under no duty to grant any relief to the movant in such circumstances. The Court, however, is not required at this time to determine whether, under the circumstances of this case, the filing of the creditor's motion for relief from the stay is, of itself, harassive and, therefore, coercive and, thus, a violation of that stay.

A separate order will be entered.

---

2. Compare the court's condemnation of a refusal to furnish medical care unless a discharged debt were paid in *In re Olson*, 38 B.R. 515 (Bankr. N.D.Io.1984).

3. For genuine nondiscrimination, see Matthew 5:44–45.

4. See *In re Brown*, 851 F.2d 81, 83 (3rd Cir.1988) and *In re Callender*, 99 B.R. 378 (Bankr. S.D.Oh. 1989).