**In re Daniel Alexander HENRY, Arlene Joy Henry, Debtors.**

**Bankruptcy No. 90–25307–T.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 29, 1991.

Robert V. Roussos, Roussos, Ford & Langhorne, P.C., Norfolk, Va., for debtors.

H. Lee Addison, III, Lawrence Glanzer, Virginia Beach, Va., for Naval Air Federal Credit Union.

Frank J. Santoro, Portsmouth, Va., trustee.

MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case is before the court on the debtor's motion for determination of contempt against the Naval Air Federal Credit Union. Hearing on the motion was held May 9, 1991, at which time both parties presented evidence and argument.

For reasons stated in this opinion, the motion will be denied.

### Facts

The debtors filed a joint chapter 13 petition on October 7, 1990. Included in their liability schedules were two debts owed to the credit union: (1) a loan in the approximate amount of $1,500.00 secured by a pickup truck and (2) a VISA credit card account with a balance of approximately $1,200.00.

Mrs. Henry had been a member of the credit union since 1981, prior to her marriage, and at the time of filing bankruptcy she still retained this separate account. In addition, the Henrys maintained a joint account which they had opened in 1985. Although both debtors were qualified for membership in the credit union, neither of them had ever been an employee of the Naval Air Station.

Membership in the credit union provides several benefits, including checking account privileges at lower than bank rate charges and minimum balances, savings (share draft) accounts at favorable interest rates, VISA accounts and other borrowing privileges for qualified borrowers.

The debtors' chapter 13 plan, which has been confirmed, provides for full payment to the credit union of the secured truck loan and an estimated ten percent payment of all unsecured claims, including their credit union VISA account.

In February 1991, the debtors were advised by the credit union that their membership privileges had been revoked and that they could no longer maintain check-ing or savings accounts with the credit union.[1]

The denial of membership privileges to the debtors was in accordance with a credit union board of directors' resolution originally adopted on June 24, 1986, which provided as follows:

c. *Denial of Credit Union Service.* It was discussed that apparently bankruptcies of some persons have caused a loss to the credit union. While it is understood that there is some question regarding expelling a member just for bankruptcy, boards may set a policy which may protect the Credit Union. Jim Sibley made a motion that a member or members of Naval Air Federal Credit Union, who causes a loss to the Credit Union, not be eligible for further use of the Credit Union or related benefits. The motion was seconded by Al Merritt and carried.

The following statement of the credit union's policy is from board of director minutes of June 28, 1988:

I. DENIAL OF ALL CREDIT UNION SERVICES TO MEMBERS WHO HAVE CAUSED THE CREDIT UNION TO SUFFER A LOSS

(1) The Board of Directors has authorized that any member who has caused the credit union to suffer a loss by reason of discharge in bankruptcy or as a result of a default or [sic] a loan, or by any other means will be denied any further use of credit union services or products.

In 1986 when the credit union had initially adopted the policy denying membership privileges to those who caused a loss, 12 percent of its losses were caused by bankruptcy filings. At present, 50 percent of the credit union's losses arise out of bankruptcy filings; in recent years, annual losses from delinquent loans and accounts have been as high as $1,500,000.00.

---

**1.** The credit union mailed formal notice to the debtors of the revocation of membership. However, Mrs. Henry testified that no written notice was received. She said she learned about the action when she went to the credit union office to make a deposit.

The credit union's staff examines chapter 13 plans of its members who file chapter 13 bankruptcy cases. Where a member's chapter 13 plan provides less than 100 percent payment of amounts owed, the member's privileges are revoked under the loss policy. Privileges are not revoked if the member's plan provides payment of 100 percent of the debt.

### Discussion And Conclusions

By their motion the debtors request this court to hold the credit union in contempt for violation of the automatic stay and for actions "designed to punish the Debtors and to discourage others from seeking relief through" filing bankruptcy. Debtors ask the court to enjoin the credit union's suspension of membership privileges of members who file bankruptcy and award them attorney fees and punitive damages. The main goal of the debtors' motion appears to be to require the credit union to reinstate the debtors' checking and savings account privileges.

The debtors' motion cites only the automatic stay provisions of 11 U.S.C. § 362 in support. However, at hearing debtors' counsel also relied substantially upon 11 U.S.C. §§ 524(a)(2) and 525(b).[2]

Beginning in 1986, the credit union had adopted a policy of denying membership privileges to persons who cause financial losses to the credit union, whether or not the member has filed bankruptcy. The 1986 directors' resolution originally adopting the policy states "that apparently bankruptcies of some persons have caused a

loss to the credit union." However, the credit union's collection manager testified that in 1986 only 12 percent of losses suffered were caused by membership bankruptcies.

From the testimony and argument at hearing, the only practical result of the credit union's revocation of the debtors' membership has been the denial of their privileges to maintain checking and savings accounts.[3] However, debtors had no apparent difficulty in opening a checking account at a regular bank even though perhaps at a somewhat higher cost to them.

There was no evidence (or argument) that credit union employees pressured the debtors to reaffirm debt so that their membership privileges would remain in force.

In argument, debtors rely primarily upon Judge Bonney's opinion in *In re Brown*, 95 B.R. 35 (Bankr.E.D.Va.1989). The issue in *Brown* was whether the court should approve the debtor's reaffirmation of a credit union loan. The credit union had a policy similar to that in the instant case, a denial of services to members who caused the credit union to suffer a loss. The evidence in *Brown* strongly suggested that the credit union used its loss policy as a means of intimidating members who filed bankruptcy to reaffirm their debt. Judge Bonney refused to approve the proposed reaffirmation as not in the debtor's best interest, and he also enjoined the credit union from enforcing "any policy which in any manner discriminates against members solely on the grounds of having filed bankruptcy."

---

**2.** (a) A discharge in a case under this title—

. . . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...
11 U.S.C. § 524(a)(2).

(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.
11 U.S.C. § 525(b).

**3.** Although Mrs. Henry testified that one of the effects of loss of credit union membership would be a denial of borrowing privileges, no serious argument has been made that the credit union should be required to make loans to the debtors.

**78**

95 B.R. at 37. Judge Bonney did not rule that the revocation of member services was discriminatory under the credit union's loss policy but only that the credit union could not discriminate solely on grounds of bankruptcy.

Since *Brown* involved an issue of reaffirmation under circumstances suggesting credit union intimidation, the decision is neither controlling nor persuasive of the result here.

The debtors also cite *In re Guinn*, 102 B.R. 838 (Bankr.N.D.Ala.1989), where a credit union's loss policy went so far as to refuse the debtor's tendered loan payments to the effect that the credit union declared the loan in default and sought relief from the automatic stay to repossess the collateral. The bankruptcy court properly denied the motion and found the credit union violated the automatic stay. *Guinn* is plainly distinguishable from our case. Even so, Judge Watson in *Guinn* suggests that the credit union might properly withdraw a debtor member's checking and savings account privileges because this action does not "have sufficient clout as to be found coercive of the debtor to pay ... a discharged debt." 102 B.R. at 842.

The credit union relies upon *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3d Cir.1988), which held that notification to the debtor of a policy similar to that in the present case did not violate either the post-discharge injunction of § 524(a)(2) or the automatic stay under § 362(a).

The credit union's policy, so far as the evidence reveals, is applied in a nondiscriminatory manner to bankruptcy debtors and nondebtors alike who cause a financial loss by not paying their debt. No undue pressure has been brought to induce the debtors to pay their debt in full. Moreover, the debtors have failed to demonstrate any significant hardship to them by being cut off from credit union membership.

In this case, I conclude as follows:

(1) I find no language in § 362(a) which would prohibit the credit union's implementation of the previously adopted nondiscriminatory policy that denied membership account privileges to the debtors. Consequently, the credit union did not violate the automatic stay of § 362(a);

(2) Section 525 is inapplicable because there is no evidence of employment discrimination (the debtors' not being employees of the Naval Air Station).

(3) The post-discharge injunction provisions of § 524(a)(2) are inapplicable. Of course, the debtors have not received their chapter 13 discharges. However, even if they had, I find nothing in the credit union's action that is prohibited by § 524(a)(2).

(4) There is no basis to grant the debtors' motion under the bankruptcy code sections cited in their behalf. Nor do I find any basis to invoke the equitable powers of this court under 11 U.S.C. § 105 to reach the result sought in the motion.

A separate order will be entered.