### In the Matter of Harvey L. ARNOLD, Debtor.

Bankruptcy No. 87–08730–JAC–7.

United States Bankruptcy Court, N.D. Alabama, Northern Division.

March 18, 1997.

---

Jack Sabatini, Huntsville, AL, for Debtor.

Jan Eberhardt, Huntsville, AL, for Creditor.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on debtor's motion to determine the validity of certain indebtedness to Stevenson Federal Credit Union. The Court reopened this case at debtor's request by order dated January 9, 1997 and scheduled an evidentiary hearing on the 4th day of February, 1997. This is a core proceeding under 28 U.S.C. § 157(a), (b)(2)(I), (J), (O) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1). Upon due consideration of the pleadings, arguments of counsel and the rele-

vant law, the Court is of the opinion that the credit union knowingly, willfully and maliciously violated the discharge injunction set forth in 11 U.S.C. § 524 of the United States Bankruptcy Code (hereinafter the "Bankruptcy Code").[1]

## I. FINDINGS OF FACT

On October 1, 1987, debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The credit union filed a proof of claim in debtor's Chapter 13 case for $5,395.81 as a general unsecured creditor. This claim represented a deficiency balance on a 1987 Chevrolet Celebrity automobile surrendered by debtor, the balance due on a signature loan, and attorney fees. The claim was deemed allowed by the Order Approving Claims, dated March 15, 1988. The case was converted to Chapter 7 on October 5, 1988. On December 15, 1988, the trustee filed a no-asset report and the Chapter 7 discharge was entered on February 1, 1989.

Mr. Arnold's wife, Suzanne Arnold, chose not to file bankruptcy with her husband. Subsequent to debtor's bankruptcy, Mrs. Arnold was personally obligated to the credit union on an indebtedness in the approximate amount of $3,000.00. She became delinquent on this obligation and on April 4, 1991 the credit union filed a complaint against her to collect same in the District Court of Jackson County, Alabama. A consent judgment was entered in favor of the credit union and against her on May 2, 1991, in the amount of $3,333.32, plus costs.

After the consent judgment was entered, Mrs. Arnold became concerned that the credit union would garnish her wages to satisfy the judgment. She had applied for a grant from her employer, Jackson County Hospital where she had duties as a ward-clerk, which if awarded would finance her last year of nursing school at a local college. She was working for minimum wages at her job at the hospital. A hospital personnel office employee informed Mrs. Arnold that a garnishment against her would destroy her chances of obtaining the grant. Mrs. Arnold testified

---

**1.** This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable to contested matters in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9014.

that her livelihood and future depended upon getting her nursing degree.

To avoid the threat of garnishment, Mrs. Arnold contacted the credit union and attempted to workout a repayment schedule. She informed Diana Matthews, a loan officer with the credit union, that she was in nursing school and did not make enough working part-time at the hospital to have her wages garnished. After it became apparent no agreement could be reached, Mrs. Arnold's husband, the debtor, contacted Jimmie Faye Shrader, the manager of the credit union, and offered to have the payments withheld from his paycheck.

Shrader advised debtor that it would be impossible for the credit union to withhold the debt from his paycheck because he was no longer a member of the credit union. She informed him it was credit union policy to revoke membership of anyone causing the credit union a loss, including a loss caused by bankruptcy. Arnold offered to rejoin the credit union, but Shrader informed him that as a condition for him to rejoin, he would have to repay the loss he caused i.e. repay the $5,395.81 previously discharged by virtue of his Chapter 7 bankruptcy. Shrader further advised debtor that if he rejoined the credit union, he and his wife would be allowed to execute a new obligation for their combined debts to be repayable in monthly installments.

The Arnolds, desperate and faced with no other satisfactory alternatives, assented to the demands of the credit union. They executed a new note on May 22, 1991 for the total amount of $8,055.56. which represented Mr. Arnold's discharged debt (approximately $5,000.00) and Mrs. Arnold's judgment debt (approximately $3,000.00) repayable with interest at 18% per annum.[2] The credit union also added credit disability and credit life insurance to the amount financed at a rate of 13.8 cents and 5.5 cents, respectively, per $100.00 of the monthly loan balance (another 19.3% charge), which when added to the 18% interest totaled a 37.3% charge on the total

amount financed. Debtor testified that he later attempted to drop the credit disability and credit life insurance, but was advised that he would not be permitted to do so. The monthly payments on the obligation were set at $121.00 for the first three months and $321.00 per month for the balance of the loan and were set up on payroll deduction from Mr. Arnold's paycheck.

Debtor testified that he paid in excess of $11,000.00 on the new note over the next five years. The credit union offered a handwritten payment history into evidence reflecting total payments of $10,371.79. See Exhibit K. In July of 1996, debtor stopped the payroll deduction upon discovering that the actions of the credit union may have been in violation of the discharge injunction and initiated the current proceeding.

## II. CONCLUSIONS OF LAW

Based upon the foregoing, debtor contends that the credit union is in willful and malicious violation of the discharge injunction contained in 11 U.S.C. § 524(a)(2) of the Bankruptcy Code in coercing him to pay his discharged debt. Debtor further contends 11 U.S.C. § 524(c), which requires the execution of court approved reaffirmation agreements, provides the only means by which an agreement based on a dischargeable debt is enforceable. Debtor requests a determination of contempt and sanctions, including the recovery of the entire amount paid on the note, attorney fees, and punitive damages. The credit union counters that the subject debt is a post-petition debt based upon new, valuable, and adequate consideration, i.e. its forbearance to execute on its judgment against Mrs. Arnold. The credit union further argues that the payments were made voluntarily under § 524(f) pursuant to which a debtor may voluntarily repay discharged debts.

Accordingly, this Court must determine whether the note dated May 22, 1991 is a distinct and valid post-petition agreement enforceable against debtor or whether the

---

**2.** The evidence indicates the credit union filed a proof of claim in Mr. Arnold's bankruptcy case for $5,395.81 and said amount was discharged as an unsecured claim. The consent judgment against Mrs. Arnold was for $3,333.32, plus costs. When combined these debts exceed $8,055.56. The parties failed to satisfactorily explain this discrepancy at trial.

note is simply an attempt to obligate debtor on a previously discharged debt.[3]

### A. The credit union failed to comply with § 524(c) requiring the execution of a court approved reaffirmation agreement.

■ In the case before the Court, the consideration for the note executed by the Arnolds was based in part upon a debt discharged in Mr. Arnold's bankruptcy case. In essence Mr. Arnold obligated himself to pay his discharged debt in exchange for the credit union's promise not to execute on its judgment against his wife. Where the consideration for a post-petition agreement is based in part upon a dischargeable debt, the agreement must comply with the provisions of § 524(c) of the Bankruptcy Code, which provides in pertinent part as follows:

> An agreement between a holder of a claim and the debtor, *the consideration for which, in whole or in part, is based on a debt that is dischargeable* . . . is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—
>
> (2) such agreement contains a clear and conspicuous statement which advises the

debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court . . .

(3) such agreement has been filed with the court . . .

\* \* \* \* \* \*

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement[.]

11 U.S.C. § 524(c) (emphasis added).

■ The consideration for the agreement between the parties in the present case consisted of the forbearance by the credit union to execute on the wife's judgment (i.e. avoiding the immediate garnishment of his wife's wages) in exchange for the debtor's promise to pay his wife's debt and his previously discharged debt to the credit union in monthly installments. Thus, even though the debtor may have received some post filing consideration, at least part of the consideration for the agreement was based upon the repayment of the dischargeable debt. *In re Gardner,* 57 B.R. 609, 610 (Bankr.D.Me.1986).

---

3. An essential element of consumer bankruptcy law is the protection provided by the automatic stay provisions of § 362(a) of the Bankruptcy Code. *See Patterson v. B.F. Goodrich Employees Fed. Credit Union (In re Patterson),* 125 B.R. 40, 46 (Bankr.N.D.Ala.1990). Upon the granting of a Chapter 7 discharge the automatic stay provisions of § 362(a) cease, but § 524(a)(2) provides that the discharge operates as an injunction against any act "to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2). Similar to the automatic stay provisions of § 362(a), the discharge injunction provided by § 524(a)(2) is an essential element of consumer bankruptcy law. *See Hardy v. I.R.S. (In re Hardy),* 97 F.3d 1384, 1388 (11th Cir.1996). Congress enacted § 524(a) to insure debtors are not pressured in any way to pay discharged debts. See H.R.REP. No. 95–595, at 92 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963.

Courts have consistently held that the mere cancellation of a debtor's credit union membership, although against public policy to some extent, does not violate the automatic stay of § 362(a)(6) or the discharge injunction of

§ 524(a) as an act to collect a dischargeable or discharged debt. *See In re Guinn,* 102 B.R. 838, 840 (Bankr.N.D.Ala.1989); *In re Brown,* 851 F.2d 81, 84 (3rd Cir.1988); *In re Callender,* 99 B.R. 378 (Bankr.S.D.Ohio 1989); *In re Henry,* 129 B.R. 75 (Bankr.E.D.Va.1991). Where the cancellation is combined, however, with certain acts by the creditor which result in the repayment of a discharged debt, such acts may violate §§ 362(a)(6) and 524(a) of the Bankruptcy Code. See *In re Patterson,* 125 B.R. at 50; *In re Guinn,* 102 B.R. 838 (Bankr.N.D.Ala.1989).

In the *Guinn* case, the bankruptcy court found that a credit union violated the automatic stay when it terminated the debtor's membership and refused to accept the debtor's payment on a real estate mortgage. The court rejected the credit union's argument that it was not required to accept payments from a person who was not a member and condemned the credit union's effort to put the debtor in default by refusing the debtor's payments. *Id.* at 843. In the present case, the credit union admitted that the only way it would accept installment payments on the wife's obligation would be for the debtor to rejoin the credit union and that the only way he could do this would be to refinance his discharged obligation to the credit union.

In the *Gardner* case, the debtor, an accountant, had discharged in a Chapter 7 an unsecured claim in the amount of $69,000.00 by a former client based on malpractice by debtor. The bankruptcy court granted relief from the stay for the limited purpose of claimant obtaining a final judgment in state court against debtor's malpractice carrier. The debtor was required to participate in the state court action as a witness, but was not subject to any personal liability on the debt.

When the matter came to trial in state court, the plaintiff and defendant carrier negotiated a settlement, but were $4,500.00 apart. At this point, debtor offered to pay the $4,500.00 to complete the settlement. He was motivated to do this by the belief that the settlement would keep a malpractice judgment off his record and thus not injure his accounting practice. Later, the debtor based on advise of his bankruptcy lawyer refused to abide by the settlement and asserted that his obligation had been discharged by his bankruptcy. The bankruptcy court held as follows:

Mr. Daviau and Mr. Nale may be correct; the agreement may have been voluntary and some new consideration may have been received. But, being correct avails them nothing. Section 524(c) of the Code provides that any agreement between the plaintiff Terry and the debtor 'the consideration for which, in whole or in part is based upon a debt that is dischargeable....' must comply with section 524(c). Even though the debtor may have received some post filing consideration, at least part of the consideration for the agreement is based upon the dischargeable debt.

Section 524(c), as pertinent, requires that:

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part; is based upon a debt that is dischargeable ... is enforceable ... only if— ...

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs

later, by giving notice of recision to the holder of such claims;

(3) such agreement has been filed with the court

. . .

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement....

In enacting these reaffirmation rules, Congress attempted to preserve the fresh start goal of the bankruptcy laws and insure that "voluntary" reaffirmation agreements were truly voluntary.

Because of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, the language of section 524(c) must be strictly construed.

There is no evidence that either Mr. Daviau or Mr. Nale executed any pressure on the debtor to participate in the settlement agreement. Lack of such pressure, however, makes no difference here. The agreement must comply with Section 524(c) to be enforceable.

*Id.* at 610 (citations omitted).

In the case of *Republic Bank v. Getzoff (In re Getzoff)*, 180 B.R. 572 (B.A.P. 9th Cir. 1995), the court held that a guaranty executed post petition was invalid under § 524(c) where the consideration was based on a discharged debt. Prior to filing bankruptcy, the debtor had executed a continuing guaranty of his corporation's obligations under a note with the creditor. After the debtor filed bankruptcy, the creditor entered into a new agreement with debtor's corporation extending the terms of the loan. The debtor executed another guaranty of the new obligation which included his discharged liability. The creditor argued that the second guaranty was not a promise to repay a discharged debt, but rather a new promise in consideration for the creditor's promise to extend the terms of the corporation's loan. The court determined that the second guaranty was subject to the requirements of § 524(c) because part of the consideration for the loan extension was based on a discharged debt. The court explained as follows:

Section 524 references the consideration given by the debtor, not the lender. Under Section 524(c), if the debtor's consideration is based in whole or in part on a discharged debt, then a reaffirmation agreement must be filed with the court. The fact that the Bank gave new consideration for the Second Guaranty does not change the fact that the consideration given by [the debtor] was his promise to honor a discharged debt, the First Guaranty.

*Id.* at 574.

Two of the cases cited by the credit union, *Minster State Bank v. Heirholzer (In re Heirholzer)*, 170 B.R. 938 (Bankr.N.D.Ohio 1994) and *Button v. Sheridan Oil Co., Inc. (In re Button)*, 18 B.R. 171 (Bankr.W.D.N.Y. 1982), in support of its position that new consideration was given by the credit union do not adequately address § 524(c) which requires a properly executed and court approved reaffirmation agreement. The Court believes these cases are wrong. In the alternative, however, the cases can be distinguished. In the *Heirholzer* case, the bank in addition to the personal obligation of the debtor which was discharged in bankruptcy, also had a real estate mortgage on debtor's property which passed through the bankruptcy. The bank accepted a new note, post discharge, in order to forbear on foreclosing its mortgage, which it had a perfect right to do. Similarly in the *Button* case, the creditor had a non-dischargeable obligation against the debtor, i.e. a judgment for criminal restitution for which, post bankruptcy, it accepted a new note from debtor to pay said obligation. In each of these cases the creditors had rights against the debtor or his property which passed through bankruptcy unaffected by the debtor's discharge. In the case before the Court, all the credit union had against Mr. Arnold was an unsecured debt which had been discharged. These two cases are non persuasive. Section 524(c) was not complied with.

**B. Repayment of the discharged debt was not voluntary in the context of 11 U.S.C. § 524(f).**

■ The credit union next contends that it did not engage in any activity to collect the debt discharged by debtor in his Chapter 7, but merely accepted debtor's voluntary offer to repay the subject debt. Although § 524(f) of the Bankruptcy Code permits the "voluntary repayment" of a discharged debt, the voluntariness of such payment is destroyed where the payment is "the result of pressure or other inducement by sophisticated creditors." *Hudson v. Central Bank (In re Hudson)*, 168 B.R. 368 (Bankr.S.D.Ill.1994). In the *Hudson* case, the debtors made payments on a debt they believed was still owing but which had, in fact, been discharged. The defendant bank did not ask for the payments, but did not refuse them either and accepted same without advising the debtors they were no longer obligated on the debt. Debtors later realized that the debt had been discharged in their Chapter 7 and moved to reopen the case and to require the bank to return the money mistakenly paid.

The bankruptcy court discussed § 524(f) and defined voluntary as used in § 524(f) "in an objective sense as referring to repayment that is free from creditor influence or inducement, regardless of whether the debtor was motivated by forces unrelated to the creditor." *Id.* at 370. In discussing the definition of voluntary, the court stated "[o]ne meaning of 'voluntary' would require that the repayment be spontaneous, that is induced by nothing other than the debtor's own conscience." *Id.* The court concluded the debtors' repayment was motivated by a mistaken belief formed independent of action by the bank, was voluntary within the meaning of § 524(f), and that the debtors acted freely in making the payment to the bank after their discharge. The court specifically found that the bank did not prompt or otherwise induce the payments by debtors, but that the payments were made entirely on the debtors own initiative.

In the case of *Smurzynski v. General Fin. Corp. (In re Smurzynski)*, 72 B.R. 368 (Bankr.N.D.Ill.1987), the bankruptcy court denied the creditor's motion to dismiss debtor's complaint for the return of funds where the creditor required the debtor to repay a portion of a discharged debt without a reaf-

firmation agreement. The court explained as follows:

> If [the creditor] has taken steps to enforce its agreement and collected a portion of a debt previously discharged in bankruptcy, and the Plaintiff has paid money in response to [the creditor's] collection efforts, the Plaintiff's "voluntary repayments" are not voluntary at all, but are made pursuant to [the creditor's] collection efforts. This is hardly the type of voluntary repayment made out of a sense of moral obligation that Congress envisioned when it adopted § 524(f). To hold otherwise would ignore the difference between a truly voluntary repayment and an unenforceable post-petition non-conforming reaffirmation agreement.

*Id.* at 370.

 In the present case there is clear and convincing evidence that the credit union pressured debtor to repay his discharged debt by requiring the repayment of his debt as a condition for the renegotiation of his wife's debt. He was required to rejoin the credit union in order to help his wife and in order to rejoin he had to pay his discharged debt. He was not undertaking to repay the credit union out of some moral obligation nor was his motivation to repay free from the creditor's influence or inducement. During the time surrounding the renegotiation of Mrs. Arnold's debt, the Arnolds were extremely distressed by the threat of the imminent garnishment. The Arnolds made very convincing witnesses and it was obvious that Mr. Arnold, a dedicated husband, would do practically anything for his wife. The credit union knew that it had the debtor over a barrel and eagerly took advantage of the situation. Shrader testified that the credit union was merely "trying to help these people," but her testimony and demeanor impressed the Court otherwise and the Court is convinced that the credit union was helping itself at the Arnolds' expense and in essence was punishing them as opposed to helping them. The Arnolds endured considerable hardship over the years that the $321.00 per month payments were deducted from Mr. Arnold's paycheck.

In considering the totality of the circumstances surrounding the execution of the new note, it is evident that the credit union was keenly aware of debtor's desperation to help his wife. The credit union seized the opportunity to recoup the loss caused by debtor's Chapter 7 and to make itself a handsome profit. The Court finds the credit union to be in willful and malicious violation of the permanent discharge injunction by requiring debtor to include the discharged debt in the new note as a condition of saving his wife's nursing career. The conduct of the credit union shocks the conscious of the Court.

## C. Damages for violation of 11 U.S.C. § 524

 Mr. Arnold requests sanctions for contempt to recover actual damages, attorney fees, costs, and punitive damages for the credit union's violation of the discharge injunction. Initially, the Court notes that unlike 11 U.S.C. § 362(h), which authorizes the recovery of actual damages, attorney fees, and punitive damages, § 524 does not expressly authorize any relief other than injunctive relief. *Walker v. M & M Dodge, Inc. (In re Walker),* 180 B.R. 834, 847 (Bankr.W.D.La.1995). However, "the modern trend is for courts to award actual damages for violation of § 524 based on the inherent contempt power of the court." *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1388 (11th Cir.1996). Some courts have awarded sanctions and costs to compensate the debtor for amounts wrongfully withheld in violation of § 524. *Id.* (citations omitted). Additionally, the majority of courts allow punitive damages for violation of § 524, but differ as to their reasoning. *In re Walker,* 180 B.R. at 847 (citing *In re Miller,* 81 B.R. 669, 670 (Bankr.M.D.Fla.1988), later proceeding, *In re Miller,* 89 B.R. 942, 943 (Bankr.M.D.Fla.1988) (finding that an attorney acted "willfully and in clear disregard and disrespect of the bankruptcy laws and awarded punitive damages in the amount of $2,500.00"); *In re Owen,* 169 B.R. 261 (Bankr.D.Me.1994) (requiring debtor to demonstrate "malevolent intent" in violating § 524)).

In the *Hardy* case, the Eleventh Circuit chose to exercise caution in invoking its inherent powers, as recommended by the Supreme Court in the case of *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991), and instead relied on the statutory contempt powers of 11 U.S.C. § 105 to determine the issue of sanctions for violating § 524. *Id.* at 1389. Under a court's inherent contempt powers a finding of "bad faith" or "malevolent intent" is necessary for a finding of contempt. *Id.* However, under the court's statutory contempt powers a court may award sanctions for contempt by finding that the creditor acted willfully according to the following test under which the movant must prove the creditor knew (1) that the discharge injunction was invoked and (2) intended the actions which violated the injunction. *Id.* at 1390. The burden of proof is on the movant to prove the willfulness of the violation by clear and convincing evidence. *Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1545 (11th Cir.1996) (providing that "[a] finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated").

In *Hardy,* the court remanded the case with instructions to the district court to make a determination of willfulness, but limited the sanctions available under § 105 to sanctions that "are coercive and not punitive." However, the facts in *Hardy* are distinguishable from those of the present case. *Hardy* involved an adversary proceeding brought by a debtor against the federal government for the government's alleged violation of § 524 in attempting to collect a tax debt discharged in the debtor's Chapter 13 case. Thus, the award of sanctions was limited by the sovereign immunity waiver of 11 U.S.C. § 106 which provides that a court can issue an "order or judgment awarding a money recovery, but not including an award of punitive damages" against a governmental unit. 11 U.S.C. § 106(a)(3).

In a companion case, *Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.)*, 92 F.3d 1539 (11th Cir.1996), the Eleventh Circuit discussed the sanctions available under the statutory contempt powers in § 105 and stated in relevant part:

> Sovereign immunity aside, § 105 uses the broad term "any" which encompasses all forms of orders including those that award monetary relief. The term "any" should be given this broad construction under the 'settled ruled [sic] that a statute must, if possible, be construed in such fashion that every word has some operative effect.' *United States v. Nordic Village*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). The broad term "any" is only limited to those orders that are "necessary or appropriate" to carry out the Bankruptcy Code. Therefore, the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensatory or *punitive,* as long as it is "necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

*Id.* at 1553 (emphasis added).

Under the test set forth in *Hardy* and pursuant to § 105(a) the Court believes that Mr. Arnold is entitled to actual damages, attorney fees, and punitive damages based upon the clear and convincing evidence that the credit union acted willfully in clear disregard and disrespect of the bankruptcy laws with malicious intent. The credit union was familiar with the injunction afforded by § 524, yet intentionally engaged in conduct resulting in the repayment of the discharged debt. Debtor's repayment of the discharged debt is not of the type of voluntary payment permitted by § 524(f), but instead constitutes an unenforceable agreement which did not comply with the reaffirmation provisions of § 524(c) and was not supported by adequate consideration.

Accordingly, the credit union shall first credit the funds collected under the new note in full satisfaction of Mrs. Arnold's debt and return the balance of the funds to the debtor with interest at 18% from the time paid by Mr. Arnold until the time repaid to him. *Brantley v. Sharon Weeks (In re Brantley),* 116 B.R. 443 (Bankr.D.Md.1990). The credit union shall further refund the credit life and disability insurance premiums paid by debtor from the time debtor informed the credit union that he wished to terminate said cover

age. The Court finds that a reasonable attorney's fee is $1,831.25 plus $600.00 for trial. *See* Plaintiff's Exhibit 6 (itemizing time spent in preparation of trial for a total 14.65 hours).

Finally, the Court is satisfied that punitive damages (sanctions) are necessary and appropriate in the present case. The Court specifically finds that the credit union acted wilfully and maliciously in its transaction with debtor. It dealt from a position of power over the debtor who was willing to do practically anything for his wife. The credit union piled on credit life and disability insurance on top of the obligation and refused to allow debtor to delete said coverage. The debtor had to pay a 35% charge on the obligation. The credit union was not out to help the debtor and his wife, but were out to punish them while helping itself. The conscious of the Court is shocked. In the recent Supreme Court case of *BMW of North America, Inc. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the Court refused to establish a mathematical formula for determining punitive damages and instead stated that the proper analysis is " 'whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred.' " *Id.* at ——, 116 S.Ct. at 1602 (quoting *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993)). However, the Court indicated that an award of four to ten times the amount of compensatory damages may be appropriate depending upon the circumstances in each case. In the present case, the Court believes that an award of $15,000.00 in punitive damages, which represents approximately two to three times the amount of actual damages, bears a reasonable relationship to the actual harm inflicted on the debtor by the credit union's willful and malicious violation of the discharge injunction of § 524. This amount shall be paid in addition to actual damages and attorney fees.