**In re Delores C. BROWN, Debtor,**

v.

**PENNSYLVANIA STATE EMPLOYEES CREDIT UNION.**

No. 87–5872.

United States Court of Appeals, Third Circuit.

Argued June 7, 1988.

Decided June 27, 1988.

James H. Turner (argued), Turner & O'Connell, Harrisburg, Pa., for appellant.

Valerie A. Potteiger (argued), Anthony DiSanto, Kleiman & DiSanto, Harrisburg, Pa., for appellee.

Before STAPLETON, GREENBERG and HUNTER, Circuit Judges.

## OPINION OF THE COURT

HUNTER, JAMES III, Circuit Judge:

The Pennsylvania State Employees Credit Union ("PSECU") appeals a damage award imposed for violations of the bankruptcy code. Appellee Delores Brown is a debtor seeking the protection of the bankruptcy laws; appellant PSECU, her employee credit union, is one of her creditors. PSECU sent a letter to Brown stating that it will bar her from membership unless she reaffirms, with court approval, her outstanding debt. Brown contends that the letter was an improper attempt to collect a dischargeable debt, in violation of 11 U.S.C. § 362(a)(6) and § 524(a). The district court, which had jurisdiction under 28 U.S.C. § 158(a) on appeal from the bankruptcy court, agreed. We have jurisdiction under 28 U.S.C. § 158(d). Because we find that the bankruptcy laws do not require PSECU to provide services to Brown, we will reverse the decision of the district court.

### I.

The essential facts are not in dispute. On May 1, 1984, Delores Brown filed a voluntary petition for bankruptcy under Chapter 7 of the bankruptcy code. On May 3, Brown's attorney wrote to PSECU informing the credit union that a petition had been filed on behalf of his client, so that "all collection efforts ... should cease immediately." On June 5, 1984, PSECU sent a letter directly to Brown. Her attorney was not provided with a copy. That letter, on which the dispute centers, read in part:

> It is the Credit Union's policy to deny future services to members when any portion of the debt is discharged in bankruptcy. However, if the obligation is reaffirmed with court approval, you would remain eligible for services as though the bankruptcy had not occurred.

Brown filed a complaint with the bankruptcy court on July 31, 1984. She alleged that the letter violates the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a)(6), the injunction against attempts to collect dischargeable debts, 11 U.S.C. § 524(a)(2), and the provision against discrimination on account of bankruptcy fil-

ing, 11 U.S.C. § 525.[1]

The bankruptcy court conducted a brief hearing, receiving the testimony of Brown and an officer of the credit union. The hearing established the following facts. PSECU had provided an unsecured loan of $5,000 to Brown, most of which remained unpaid at the time of the petition. PSECU also provided Brown non-credit services. Brown maintained a "share draft account" with the union, which she operated as her checking account. Her earnings were deposited directly into the account, and the credit union paid the premiums on Brown's life insurance directly out of that account. The credit union also provides other credit-related services, such as secured motor vehicle loans and mortgages, and student loans. In addition, the credit union may act as a surety for checks up to $200.

According to the testimony, PSECU bases a credit decision on flexible criteria, such as the character history of the applicant, rather than relying solely on credit history. However, its bylaws bar all debtors who have caused the credit union financial loss. While Brown does not dispute that both bankrupts and nonbankrupts who fail to repay loans suffer the same penalty, she did testify that she was unaware of this penalty. The testimony also established that the credit union is not difficult for state employees to join, requiring only a 25–cent fee and the purchase of a $5 share. With the exception of the rule barring those who have caused it a loss, the credit union does not examine the credit history of its members.

The bankruptcy court found only a technical violation of the bankruptcy laws. It first held that § 525 of the Act, which bars discrimination by government or its agencies, did not apply. Although PSECU is comprised of present and former government employees (and their families), the bankruptcy court found this fact insufficient to transform PSECU into a governmental body. The court next considered the credit union's policy of denying services

to those who discharge in bankruptcy an obligation to the credit union. It found the policy was not an attempt to collect the debt, noting that the policy applies equally to nonbankrupts. The bankruptcy court held that "there is nothing in the code which requires a creditor to continue to deal with a debtor." Because the credit union "cannot be ordered to provide services to a debtor," its policy did not violate the law. Because the policy itself did not violate the law, the court found that PSECU may inform Brown of its policy.

Although the bankruptcy court found that PSECU, in contacting Brown, did not act with the purpose of recovering its claim, it disapproved the manner in which PSECU acted. It found that, by mailing the letter directly to Brown, the credit union violated 11 U.S.C. § 362(b)—the "automatic stay", which bars collection efforts once a petition is filed. PSECU interfered with the "breathing spell" from creditors contemplated in the section by dealing directly with Brown, instead of mailing the letter to her attorney. Because the error was "technical and clearly unintended," the bankruptcy court did not assess damages.[2]

Both parties appealed to the district court, which reversed the decision of the bankruptcy court. Quoting the legislative history of § 362, the district court stated that the automatic stay "stops *all collection efforts*," (court's emphasis) and "prevent[s] creditors from attempting in any way to collect a prepetition debt." The court found that, although it could not require PSECU to extend credit, the denial of all future services amounted to an attempt by the credit union to collect the prepetition debt. That nonbankrupt debtors suffer the same denial the district court found unpersuasive: Congress intended those who file a bankruptcy petition to receive the benefit of certain protections, including the injunction against collections, and the benefit of a "fresh start" upon discharge. The district court found PSECU's actions "more than mere technical violations", but found no

1. Because the petition was filed before the effective date of the 1984 reforms, all references are to the 1978 bankruptcy code unless otherwise specified.

2. PSECU does not contest before this court the finding of a technical violation.

evidence of "any willful or outrageous conduct sufficient to warrant punitive damages." The district court "reversed in part" and remanded to the bankruptcy court for "a determination of the appropriate form of sanctions."[3]

PSECU appealed to this court, which dismissed for want of jurisdiction because damages had not yet been assessed. *Brown v. PSECU*, 803 F.2d 120, 122–23 (3d Cir.1986). The bankruptcy court then entered a second order assessing damages. Though it agreed with the district court that PSECU's actions did not warrant punitive damages, it did find the credit union's actions willful. The bankruptcy court therefore ordered Brown reinstated and ordered PSECU to pay $4,174.83 "for attorney's fees and costs." The district court affirmed the order of the bankruptcy court on November 30, 1987. PSECU filed a notice of appeal on December 7, 1987. The district court's second order meets the "traditional finality requirements", 803 F.2d at 123, so that this court has subject matter jurisdiction over the appeal.

## II.

■ Because in bankruptcy cases the district court sits as an appellate court, our review of the district court's decision is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981). This court exercises the same review over the district court's decision that the district court may exercise. The findings of fact by the bankruptcy court are reviewable only for clear error. Bankruptcy Rule 8013; *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). Legal ques-

tions are, of course, subject to plenary review.

## A.

■ Section 362 of the bankruptcy code provides that, upon the filing of a petition in bankruptcy, a creditor must stay "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...." 11 U.S.C. § 362(a)(6). The stay, which operates as an injunction, remains in effect until the discharge is granted. 11 U.S.C. § 362(c)(2)(C). Section 524 of the bankruptcy code provides the effects of a discharge in bankruptcy. Among other effects, the discharge

> operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).[4]

■ Brown argues that, by refusing its services, PSECU attempted either to collect on its loan or to coerce Brown into reaffirming the obligation. In its original order, the bankruptcy court found that PSECU did not act with the purpose of collecting the debt.[5] This finding is not clearly erroneous. The letter is mildly worded, and speaks of reaffirmation, which requires a formal agreement before the bankruptcy court.[6] The bankruptcy court found that sending the letter directly to Brown was a "clearly unintended" violation of her relationship with her attorney and that its purpose was not to collect the debt. The

---

**3.** The court presumably upheld the bankruptcy court on the § 525 discrimination claim. Brown agrees that this claim is no longer in question.

**4.** The district court held that PSECU violated both provisions. The record is clear that Brown filed her petition, thereby triggering the prohibitions of § 362, before PSECU sent its letter. However, it does not appear that Brown has been granted the discharge in bankruptcy which triggers the prohibitions of § 524. Because Brown seeks a declaratory judgment that the credit union's policy violates § 524, and because PSECU has stated that it will continue to enforce its policy, we have jurisdiction to deter-

mine whether the declaratory judgment may issue.

**5.** In this respect, the present action differs from *In re Olson*, 38 B.R. 515 (Bkrtcy.N.D.Iowa 1984), relied on heavily by the debtor, where the bankruptcy court found that the creditor denied services with the intent to coerce repayment. To the extent that opinion differs with our holding, we do not follow it.

**6.** At all times relevant to this case, a debtor could reaffirm a dischargeable debt only if agreed prior to discharge and not rescinded by the debtor for thirty days thereafter, and if presented to the bankruptcy court. 11 U.S.C. § 524(c) & (d).

bankruptcy court evidently credited the testimony of a PSECU official that the credit union generally sends these letters directly to debtors because most recipients are unrepresented. The bankruptcy court's factual finding on this issue also must be upheld.

The bankruptcy court's original factual findings are fully supported. Nothing in this record indicates that the manner in which PSECU acted was intended to harass Brown, or in fact caused her injury, apart from the denial of future services. Thus, Brown's claim rests solely on the fact that PSECU informed her by letter she would be barred from membership unless she reaffirmed her debt with court approval. The question before this court is whether the subject matter of that letter, without more, violates the injunctive provisions of the bankruptcy code.

### B.

We hold that PSECU did not violate § 362 or § 524 of the bankruptcy code merely by informing Brown of its policy. Nothing in the bankruptcy code requires this creditor to do business with this debtor. To require dealings would impermissibly extend the scope of the code's anti-discrimination provisions, and Brown fails to make out a case warranting an extension on the particular facts of this case. Because PSECU may refuse Brown services, we agree with the bankruptcy court that PSECU may inform Brown of its policy. In refusing to impose sanctions on PSECU, this court agrees with other courts of appeals which have considered the issue, and our decision does not infringe on the policies of the bankruptcy code.

The limited scope of the anti-discrimination provisions of the code demonstrates that PSECU may lawfully refuse to deal with Brown on account of her discharged debt. Section 525 bars only governmental agencies and employers from discriminating against a debtor on account of a previous bankruptcy filing. 11 U.S.C. § 525. Congress rejected a general anti-discrimination policy. See, In re Goldrich, 771 F.2d 28, 31–32 (2nd Cir.1985) (reviewing history).[7] Brown has conceded, as both lower courts found, that § 525 does not bar PSECU from enforcing its policy. Yet, any refusal of future services by a present creditor has some coercive impact. If we hold that the impact itself is sufficient to violate the bankruptcy injunctions of § 362 and § 524, then a creditor—whether or not a governmental unit or employer—may be prevented from denying future services because of a prior discharged debt. The debtor could do indirectly through § 362 and § 524 what she cannot accomplish directly through the anti-discrimination provision. We cannot find that Congress intended this result.[8]

Brown argues that, in this particular case, the withdrawal of the credit union's services is, without more, coercive. Even assuming that a mere refusal to deal can violate § 362 and § 524 of the bankruptcy code, Brown cannot succeed on these facts. The conveniences which the credit union supplies the debtor—direct deposit and automatic payment of life insurance premiums—do not rise to such a level that the threat of their withdrawal is necessarily coercive. See, Morgan Guaranty Trust Co. v. American Savings and Loan Ass'n., 804 F.2d 1487, 1491 n. 4 (9th Cir. 1986) (comparing cases), cert. denied, —— U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). Further, Brown never alleged these services were available only through the credit union. Therefore, PSECU is not barred from having and enforcing a policy

---

7. See also, In re Exquisito Services, Inc., 823 F.2d 151, 153 (5th Cir.1987) (anti-discrimination provision limited to cases analogous to those enumerated); Wilson v. Harris Trust and Savings Bank, 777 F.2d 1246, 1247–48 (7th Cir.1985) (private parties not protected) (pre–1984 law). Even a government creditor may refuse to extend credit because it suffered a loss with a prior discharged debt. See, Goldrich, 771 F.2d at 28.

8. Also, Congress allows bankrupt status to be reported for ten years, see 15 U.S.C. § 1681c(a)(1), further indicating that a creditor may deny a loan based on that status. Lastly, holding illegal PSECU's action also creates an untenable distinction between past and future creditors. A potential creditor who has never extended a loan to a bankrupt is free to deny credit—having no prior loan of which to coerce payment—while the creditor who has formerly extended loans is not.

of excluding members who have failed to repay a loan to the credit union, regardless of whether the debt has been discharged in bankruptcy.

Having concluded that PSECU's bylaw provision is valid, we do not see how merely sending the letter offends the bankruptcy laws. To hold otherwise allows the credit union to deny services to a debtor but forbids it to say why. The result is unreasonable, and finds no support in the statute or its history. The communication at issue works no unfairness on the debtor. On the contrary, it allows Brown to choose between discharging the debt and retaining the creditor's services. (As the bankruptcy court noted, one purpose of allowing reaffirmation is to preserve credit ratings.) Where, as here, a debtor is unaware of the creditor's policy, barring communication might prevent the debtor from making the choice until it is too late.

Our decision agrees with the precedent laid down by other courts of appeals. The Court of Appeals for the Second Circuit, while noting that a credit application may be used to disguise a coercive attempt to obtain repayment of a discharged debt, has held that a mere refusal to do business does not amount to improper coercion. *Goldrich,* 771 F.2d at 31. The refusal can be "designed to protect the ... coffers against repeated defaults, a permissible purpose." *Id.* In that case, as in this, evidence that the policy applied to all defaulting debtors, whether or not the debts were discharged in bankruptcy, showed the noncoercive purpose of the rule. Similarly, the Court of Appeals for the Ninth Circuit has held that "mere requests for payment are not barred" without additional evidence of coercion. *Morgan Guaranty,* 804 F.2d at 1491 & n. 4.

The result we reach does not undermine either the "fresh start" provisions of the code or the "breathing spell" offered by the automatic stay. The debtor has failed to make a case that the services of the credit union are somehow necessary to her "fresh start". Brown's "fresh start" also remains protected by the several procedural requirements surrounding reaffirmation. Further, as the bankruptcy court stated in its initial opinion, the "fresh start" policy does not entitle a debtor to rights not granted by Congress: the statutory protections define the scope of the policy, not the other way around. Brown's "breathing spell" also is sufficiently protected. The respite is not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit. *See Morgan Guaranty,* 804 F.2d at 1491. The bankruptcy court found that no such immediate action was contemplated or threatened, a finding that is not contradicted by this record.

### III.

We therefore reject the proposition that a creditor violates section 362(a)(6) or 524(a)(2) of the bankruptcy code, as a matter of law, merely by informing a bankruptcy petitioner that it will refuse to deal with her unless she reaffirms her debt. The district court erred in holding that PSECU violated these provisions by sending its letter to Brown. Therefore, we will vacate the second order awarding damages and restoring Brown to membership in the credit union, and we will reinstate the original decision of the bankruptcy court.