UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————————

No. 98-2764
(CA-98-405-R, et al)

———————————————

Glenda Yvonna Arrington Kasey,

Plaintiff - Appellant,

versus

Pennsylvania Higher Education Assistance
Agency,

Defendant - Appellee.

———————————————

O R D E R

———————————————

The court amends its opinion filed July 9, 1999, as follows:

On the cover sheet, section 4 -- the decided date is corrected to read "July 9, 199<u>9</u>."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: GLENDA YVONNE ARRINGTON
KASEY,
<u>Debtor.</u>

GLENDA YVONNE ARRINGTON KASEY,
<u>Plaintiff-Appellant,</u>

v.                                                                           No. 98-2764

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY,
<u>Defendant-Appellee.</u>

GEORGE A. MCLEAN, Trustee,
<u>Trustee.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-98-405-R, BK-97-2400-7-HPR, AP-97-208-7)

Submitted: June 22, 1999

Decided: July 9, 1999

Before MURNAGHAN, HAMILTON, and MOTZ, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

Glenda Yvonne Arrington Kasey, Appellant Pro Se. Leisa Kube Ciaf-
fone, Howard J. Beck, Jr., GENTRY, LOCKE, RAKES & MOORE,

Roanoke, Virginia, for Appellee; George A. McLean, Roanoke, Virginia, for Trustee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Glenda Kasey appeals from the district court's order reversing the bankruptcy court's order determining that her student loans should be discharged pursuant to 11 U.S.C. § 523(a)(8)(B) (1994), because repayment of the loans would constitute an undue hardship. Because we find that the bankruptcy court's determinations were not clearly erroneous, we vacate the district court's order.

Kasey is a single mother with three minor children. In 1993 and 1994, she borrowed approximately $15,000 to pursue a teaching career. However, Kasey testified that she did not complete her education due to her divorce and ensuing treatment for depression. Kasey filed a Chapter 7 petition in June 1997 and sought a discharge of her student loan based on undue hardship.

After a dischargeability hearing, the bankruptcy court found that: (1) Kasey worked at the Home Shopping Network approximately 40 hours per week, earning $6.57 per hour; (2) she received monthly child support in the amount of $250 for her three children, ages 15, 11, and 4; (3) Kasey's monthly expenses totaled $1414, exclusive of an automobile payment; and (4) based on a total net monthly income of $930 (wages of $680 plus $250 child support), "[h]er monthly expenses far outweigh her monthly income." Further, the bankruptcy court found that Kasey had made good faith payments on the loan. After applying the three-prong test set forth in Brunner v. New York State Higher Educ. Servs., 831 F.2d 395 (2d Cir. 1987), the bankruptcy court concluded that repayment of the loan would impose an

2

undue hardship on Kasey and her dependents and granted her a discharge. PHEAA appealed.

The record designated by PHEAA consisted of the following items: (1) Kasey's complaint to determine dischargeability of the loan; (2) PHEAA's answer; (3) the bankruptcy court's opinion and order; (4) the bankruptcy court's docket sheet; and (5) a transcript of the hearing conducted on December 15, 1997.[1] Based on this record, the district court concluded that the bankruptcy court's factual findings regarding Kasey's income and expenses were clearly erroneous. Specifically, the district court found that Kasey's net monthly income totaled $1130, as opposed to $930, based on her testimony that her bi-weekly take-home pay was $440 and that she received $250 per month in child support (i.e., $880 plus $250). With respect to her expenses, the district court concluded that the bankruptcy court had erroneously included Kasey's car payment where she had testified that the car was paid off two months prior to the hearing. Without the car payment, the district court found that her total monthly expenses were $1228.[2] Applying the same test as did the bankruptcy court, the district court concluded that Kasey failed to meet her burden of proving undue hardship, see Brunner, 831 F.2d at 395, and vacated the bankruptcy court's decision. Kasey appeals.

Because the district court sits as the appellate court in bankruptcy, this court's review of the district court's decision is plenary. See Brown v. Pennsylvania State Employees Credit Union , 851 F.2d 81, 84 (3d Cir. 1988). Using the same standard as the district court, this

_____

[1] Within ten days after filing a notice of appeal from a bankruptcy court to a district court, the appellant must file with the clerk of the bankruptcy court, and serve on the appellee, a designation of items to be included in the record on appeal and a statement of the issues to be presented. An appellee, within 10 days after the service of the appellant's statement, may file and serve on the appellant a designation of additional items to be included in the record. See Bankr. R. 8006.

[2] It is unclear how the district court arrived at this figure. Kasey testified that her car payment had been $338 per month. However, subtracting this amount from the $1414 yields $1076, not $1228. As discussed, infra, there is no other evidence in the record with which to compare the two sets of figures.

3

court will set aside a finding of fact made by the bankruptcy court only if it is clearly erroneous. See Bankr. R. 8013; In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. See Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). The bankruptcy court's conclusions of law are reviewed de novo. See In re Bryson Properties, XVIII, 961 F.2d 496, 499 (4th Cir. 1992).

Government guaranteed student loans cannot be discharged in bankruptcy unless: (A) more than seven years has elapsed between the time the loan first became due and the filing of the bankruptcy petition; or "(B) excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Although "undue hardship" is not defined in the bankruptcy code, several courts have adopted the Second Circuit's analysis in Brunner, 831 F.2d at 395. See In re Pena, 155 F.3d 1108 (9th Cir. 1998); In re Faish, 72 F.3d 298, 306 (3d Cir. 1995); Matter of Roberson, 999 F.2d 1132 (7th Cir. 1993). Brunner established a three-part test to determine whether a debtor has shown "undue hardship" within the meaning of § 523(a)(8). First, the debtor must establish "that she cannot maintain, based on current income and expenses, a `minimal' standard of living for herself and her dependents if forced to repay the loans." Brunner, 831 F.2d at 396. Kasey's testimony established that her monthly income is $1130. The district court concluded that Kasey's expenses of $1414 included a paid-off car loan. However, this finding is contrary to the bankruptcy court's finding on this issue. Also, the transcript is far from clear on this issue and there is no supporting documentary evidence included in the record as designated by PHEAA. Kasey testified that her total monthly expenses were $1414. PHEAA's attorney asked Kasey: "Do you have a car payment?" Kasey responded: "I had one, but it's paid for now. Two months ago. It was 338 dollars a month." The transcript is unclear as to whether this amount is included in the $1414. Again, without benefit of other documentary evidence, it is impossible to say that the bankruptcy court clearly erred in construing Kasey's testimony to mean that her monthly expenses totaled $1414 exclusive of an automobile payment. Therefore, even accepting the district court's finding

4

that Kasey's net income totals $1130, we find that Kasey meets the first prong of Brunner because her monthly budget deficit is $284.

Under the second prong of Brunner, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." Brunner, 831 F.2d at 396. Kasey was asked: "[D]o you perceive anything changing in your job status or the amount of money that you have coming?" to which she responded, "no." She also stated that she had no savings or other investments. The district court nevertheless concluded that Kasey's financial circumstances were likely to improve: "Kasey has been considered for raises on an annual basis in the past, will soon pay off the furniture debts, and according to her own statements would then be able to pay $100 per month on the student loan." However, Kasey's last raise was a mere seven cents per hour. And, as the bankruptcy court noted, even after Kasey's furniture loans are paid off (which total $193 per month), her expenses would still exceed her monthly income. Although Kasey did testify that she thought she could pay $100 per month toward her student loan once the furniture loans were paid off, her ability to do so is unlikely given her financial situation. Finally, the district court failed to take into account the fact that Kasey has three minor children --two of whom are very young--and will likely incur child care expenses for several years.3 Therefore, we find that, based on the record before the district court, the bankruptcy court did not clearly err in finding that Kasey's financial condition would not likely improve any time in the near future.

Finally, the third prong under Brunner requires "that the debtor has made good faith efforts to repay the loans." Id. Kasey testified that she had received several forbearances on the loan and that she had repaid a total of "two hundred and some." The bankruptcy court found that, based on this evidence, Kasey had made good faith payments on the loan. Again, the district court disagreed, finding that "[s]uch a small percentage of the debt probably does not constitute a good faith

_____

3 The record is unclear as to whether the $1414 includes child care. The bankruptcy judge asked Kasey at the conclusion of the hearing: "Do you still have a daycare expense for the youngest one?" Kasey responded, "yes," but the amount was not disclosed.

5

effort at repayment." The district court cited In re Healey, 161 B.R. 389 (E.D. Mich. 1993), in which the district court found that the debtor's payment of $174 on a $43,000 debt, combined with a lack of effort to find ways to repay the debt, did not show good faith. Here, however, Kasey repaid almost $300 of a debt which was approximately one-third that involved in Healey, and unlike the debtor in that case, Kasey sought several forbearances. Cf. In re Brunner, 46 B.R. 752, 758 (S.D.N.Y. 1985) (district court opinion) (finding that debtor failed to establish good faith because she "filed for discharge within a month of the date the first payment of her loans came due . . . made virtually no attempt to repay, [and never] requested a deferment of payment, a remedy open to those unable to pay because of prolonged unemployment"). We find that the bankruptcy court did not clearly err in finding that Kasey had made a good faith effort to repay the loan.

Because the record before the district court fails to show that the bankruptcy court clearly erred in finding that Kasey established undue hardship under Brunner, we vacate the district court's order and remand this case to the district court with instructions to reinstate the bankruptcy court's order discharging the debt at issue. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

VACATED AND REMANDED

6