**In re Laurence C. JENNINGS and Christine A. Jennings, Debtors.**

**Laurence & Christine Jennings, Movants,**

**v.**

**Town of Greene, Respondent.**

No. 03–20402.

United States Bankruptcy Court, D. Maine.

Jan. 26, 2004.

E. Chris L'Hommedieu, Esq., Lewiston, ME, for Movant.

Wendy J. Paradis, Esq., Bernstein, Shur, Sawyer, Portland, ME, for Respondent.

## MEMORANDUM OF DECISION

JAMES B. HAINES, JR., Chief Judge.

Before me is the debtors' motion seeking an order requiring the Town of Greene, Maine, to appear in this court and show cause why sanctions should not be imposed for its alleged violation of the automatic stay. The Town asserts that sending a statutory notice and demand of overdue real estate taxes (the action that allegedly violated the stay) is merely an "act to create, perfect, continue or maintain a lien," required by state law, permit- ted as an exception to Bankruptcy Code § 362(a)'s automatic stay by § 362(b)(3).[1]

### Background [2]

This chapter 13 case was filed on March 20, 2003. On August 27, 2003, the debtors filed their motion, together with Laurence Jennings's affidavit. The motion and affidavit assert that the Town was aware of the bankruptcy, yet, on August 13, 2003, in "clear violation of the bankruptcy stay" sent the debtors a letter demanding payment of real estate tax arrears "included in the bankruptcy."[3] The motion alleges that the Town's actions in sending the letter caused them to become "emotionally distraught and embarrassed," and that they were "required to seek their counsel's assistance to cause the Bank [sic] to cease its improper collection conduct." Mr. Jennings's affidavit also asserts that the Town's actions may have been prompted by personal animosity on the part of the Town's tax collector.

The motion has been argued and the parties have submitted post-hearing briefs. The debtors concede that Maine municipalities may, in compliance with state law and the Bankruptcy Code, send a notice of overdue real estate taxes to debtors, in order to "perfect [their] lien[s] without violating the stay." Memorandum in Sup-

---

1. Unless otherwise indicated, all statutory sections cited are those of the Bankruptcy Reform Act of 1976, as amended ("Bankruptcy Code" or "Code") 11 U.S.C. § 101 *et seq.*

2. The undisputed facts are set forth in a stipulation filed by the debtors. Although not signed by the Town's counsel, the Town has not objected and, indeed, refers to the stipulated facts in its brief. In any event, the stipulation contains no objectionable information. It sets several dates already part of the record, and a copy of the tax letter(s) sent to the debtors by the Town. *See* Stipulation, doc. # 25.

3. The debtors filed a chapter 13 plan together with their petition. It included no treatment of real estate taxes owed to the Town of Greene, even though the debtors' schedules list the Town with a $1,200 priority unsecured claim. That plan was confirmed on June 11, 2003. However, the same day that the debtors filed the motion before me, they filed their "Second [sic] Amended Chapter 13 Plan." The only difference in the two plans is ¶ 4(a)—"Claims secured by property of the estate—secured claims not in arrears"— which was blank in the first plan but addresses the Town's claim in the amended version: "$2,650.04 (property taxes for 2002 and 2003)." The amended plan provides that the Town's claim will be paid directly by the debtors, *outside* their plan. The amended plan was confirmed on October 8, 2003.

port of Debtors' Motion to [sic] Contempt, dated 10/29/03, doc. # 27. Reduced to its essence, the debtors' grievance is that the notice includes "threatening" language that violates the stay against *collection* efforts.[4]

The Town contends its action comes within a clear exception to the automatic stay. Pursuant to state law, it sent a notice to the debtors informing them that if their real estate tax arrears were not paid within 30 days, a tax lien certificate would be filed in the local registry of deeds, creating a tax lien mortgage on the property. This step, it asserts, is explicitly authorized by § 362(b)(3), pointing out that the notice it sent is no different than notices routinely (and without stay relief) sent by Maine municipalities to bankruptcy debtors since § 362(b)(3) was amended by the Bankruptcy Reform Act of 1994.

### Issue

As a result of the debtors' concession that the *mailing* of the notice by the Town

did not violate the automatic stay because the Town was acting to "perfect" its lien (as permitted by § 362(b)(3)),[5] the issue is whether the *language* of the notice violates § 362(a)'s prohibition against post-petition collection efforts.[6]

### Discussion

■ The starting point must be the language of the notice sent by the Town. It reads:

State of Maine

Tax Collector's Notice, Lien Claim and Demand

30 Day Notice

IMPORTANT: *Do not disregard this notice. You will lose your property unless you pay your 2002 property taxes, interest and costs.* You may apply to the municipal officers for an abatement of

---

4. There is some confusion about how many notices the Town sent the debtors. The debtors repeatedly refer to a single notice they received on or about August 13, 2003. The stipulation (prepared by debtors' counsel) refers to a single letter attached as "Exhibit A," but includes two letters, identical in all respects except for the lot reference and the amount of taxes due. The Town's hearing brief states that two letters were sent to the debtor on or about August 4, 2003. Because neither the amount of the taxes nor the lots assessed are in dispute, and because the allegedly offensive language is the same in each, the confusion is unimportant. For simplicity's sake, I will refer only to a single notice.

5. Section 362(b)(3) states, in pertinent part:

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—

. . .

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and

powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

6. Section 362(a)(1) states, in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \* \* \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

taxes if, because of poverty or infirmity, you cannot pay the taxes that have been assessed.

. . .

I, Stephen G. Eldridge, collector of taxes for the Town of Greene, a municipal corporation located in the County of Androscoggin, state of Maine, hereby give you notice that a tax in the amount of $1,211.96 assessed and committed to me for collection on July 8, 2002, remains unpaid. The tax was assessed against real estate in said Town of Greene, and against JENNINGS, LAURENCE C. & CHRISTINE A as owner(s) thereof, said real estate being described as follows:

. . .

*I give you further notice that said tax,* together with interest in the amount of $75.15, which has been added to and become a part of said tax, *remains unpaid; that payment of the said tax,* together with a tax collectors demand fee of $3.00 and the certified mail, return requested fee of $4.42, for the sum total of $1,294.53 *is hereby demanded of you within thirty (30) days from the date of these presents,* which is the date of mailing this notice; and that a lien is claimed on said real estate, above described, to secure the payment of said tax.

Stipulations, at Ex. A, p. 2 (emphasis added). The italicized statements are those of which the debtors complain.

■ Coercive, threatening, or harassing statements made by creditors to bankruptcy debtors can violate the automatic stay. *Diamond v. Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224, 227–28 (1st Cir. 2003) (threat that complaint might be made to state real estate commission (where debtor was licensed broker) if objection to discharge complaint not settled in creditor's favor, made in the course of settlement negotiations, "could be found to be coercive by a trier of fact"); *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392, 402 (1st Cir.2002) (creditor threats of immediate action, such as foreclosure or lawsuit, may violate automatic stay). In contrast to such cases, however, the Town was here pursuing a course of action that it contends, and the debtors concede, is expressly excepted from the automatic stay under § 362(b)(3). *See generally In re Jamo*, 283 F.3d at 398 (noting operation of automatic stay exceptions set forth in § 362(b)(1)-(18)).

Because the question whether sending the notice is or is not within § 362(b)(3)'s protection *as a matter of law* is not before me,[7] I am left to inquire whether the no-

---

7. Despite the debtors' concession, the Town asks that I rule on the point. As the issue is not in controversy, and the answer is not crystalline, I decline the invitation.

To decide the issue would require reexamining the holding of *Wallingford's Fruit House v. City of Auburn (In re Wallingford's Fruit House)*, 30 B.R. 654 (Bankr.D.Me.1983). The Town urges that the 1994 amendments to the Bankruptcy Code vitiate *Wallingford's Fruit House's* vitality. The point is not so clear.

In Maine, municipalities are granted a lien on real estate to secure the payment of legally assessed real estate taxes. 36 M.R.S.A. § 552. The lien "takes precedence over all other claims ...." *Id.; Snell v. Libby,* [137 Me. 62,] 15 A.2d 148, 150 (Me.1940). The lien "continue[s] in force until the taxes are paid or until said lien is otherwise terminated by law." 36 M.R.S.A. § 552. *Wallingford's Fruit House* held that the City of Auburn violated the automatic stay by sending a lien claim notice pursuant to 36 M.R.S.A. § 942 (hereinafter " § 942") (the same type of notice at issue in this case) to the debtor postpetition. *In re Wallingford's Fruit House,* 30 B.R. at 659. After examining the tax lien statute's structure, the court held that the process begun by sending the § 942 notice is one of *enforcement,* not *perfection* of the municipality's lien. *Id.* at 658–59. As such, sending the notice did not fit within

tice violated the automatic stay on account of the demands it set forth. I conclude that it does not for two reasons. First, given that these parties agree that § 362(b)(3)'s exception protects *dispatch-* *ing* the statutory notice and that the statute (§ 942) *requires* that the notice contain a demand, I cannot conclude that the demand, an essential component of admittedly lawful conduct somehow violated the stay.[8]

§ 362(b)(3)'s automatic stay exception as then configured. *Id.*

The Town argues that as a result of the 1994 amendment to § 362(b)(3) (expanding the scope of permissible conduct from "any act to perfect an interest in property" to "any act to perfect, *or to maintain or continue the perfection of,* an interest in property") (emphasis added), sending a § 942 notice now fits within the contours of § 362(b)(3), because the sending of the notice under state law is "necessary to maintain and continue" what is admittedly an already perfected, inchoate lien. *See e.g., In re Wallingford's Fruit House,* 30 B.R. at 658 ("A tax lien certificate need not be filed in order for the City's lien to prevail over the trustee or other creditors— the tax lien is superior to all other claims on the real estate until the taxes are paid or the lien is terminated by law."). If, however, *Wallingford's Fruit House* correctly determined that § 942 is part of a tax lien *enforcement* scheme, it is hard to see how § 362(b)(3)'s expansion to include acts necessary to *maintain or continue the perfection of* liens would change the analysis at all.

Describing an earlier version of the same lien statute, the Maine Supreme Judicial Court, addressing a taxpayer's challenge to the loss of his property to the Town of Warren, stated:

The act [P.L.1933, Chap. 244] requires two things subsequent to assessment of a tax, both of which must be performed within carefully limited time intervals. The collector must give *a notice in writing* to the taxpayer and he must record *a certificate* in the registry of deeds. The details to be stated in notice and certificate are carefully enumerated. The only recital as to the *form* of either is that the certificate shall be *signed* by the collector. Previous to the enactment of the statute now under consideration, a tax lien on real estate was enforced by a "tax sale" and title passed by deed. Provision for enforcement by deed undoubtedly required all the usual and regular formalities incident thereto, including a seal. The present provision for enforcement by recording such an informal instrument as a certificate clearly evidences intent that the formalities of a deed are not requisite. The language of the act shows that the legislature was conscious of mortgages, as well as of liens (based on taxes, or otherwise), of attachments, and of other possible encumbrances. Section 1 does not purport to create a new lien or encumbrance. It recognizes that a lien attaches by law to real property as the result of the assessment of a tax thereon and provides for the enforcement of that lien by the filing of a *signed* certificate, if the tax remains unpaid after a stated interval.

*Town of Warren v. Norwood,* 138 Me. 180, 24 A.2d 229, 234 (1941); *see also Cary v. Town of Harrington,* 534 A.2d 355, 358 n. 4 (Me.1987) (referring to § 942 and 36 M.R.S.A. § 943 as a " 'tax-lien-mortgage-foreclosure' mechanism for the enforcement of property tax collections") (quoting *Avco Delta Fin. Corp. v. Town of Whitefield,* 295 A.2d 921, 924 (Me. 1972)). Indeed, 36 M.R.S.A. § 552, which creates the lien, specifically states that the lien "continue[s] in force until the taxes are paid or until said lien is otherwise terminated by law." Unless a municipality's lien, or its priority, will be lost if it doesn't comply with § 942, it isn't clear at all to me that *Wallingford's Fruit* is not still fully applicable.

8. Among other requirements, § 942 contains the following:

The tax collector may, after the expiration of 8 months and within one year after the date of original commitment of a tax, give to the person against whom the tax is assessed, or leave at his last and usual place of abode, or send by certified mail, return receipt requested, to his last known address, a notice in writing signed by the tax collector or bearing his facsimile signature, stating the amount of the tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on the real estate to secure the payment of the tax, and demanding the payment of the tax within 30 days after service or mailing of the notice with $3 for the tax collector for making the demand together with the certified mail, return receipt requested, fee.

Even were I to assume the tenor of a statutory notice's language could convert lawful action to unlawful, the notice before me is not so coercive or harassing as to violate the stay. The debtors focus on two statements, but I must take account of "the immediateness of any threatened action and the context in which a statement is made." *In re Diamond,* 346 F.3d at 227; *see also In re Jamo,* 283 F.3d at 402 (reviewing foreclosure "threats" in context of all communications between parties). The notice was sent by the Town in compliance with § 942. Maine courts have consistently held that strict adherence to the § 942's requirements is required in order for municipalities effectively to take title to property through the tax lien certificate process. *Town of Pownal v. Anderson,* 1999 ME 70, ¶ 14, 728 A.2d 1254, 1257 (1999); *Cary v. Town of Harrington,* 534 A.2d 355, 356–57 (Me.1987); *Blaney v. Town of Shapleigh,* 455 A.2d 1381, 1387 (Me.1983). As for the notice's warnings that it should not be disregarded and that the debtors might lose their property unless they pay their taxes (both true statements), even cursory inquiry would have revealed these were standard fare.[9] Further, a simple phone call to their attorney (or the Town) should have satisfied the debtors that the notice was but the first step in a long process, *see e.g.,* 36 M.R.S.A. § 943 (requiring that notice of impending foreclosure be given approximately 18 months after the recording in the registry of the tax lien certificate), and any loss of property could not occur without the Town obtaining relief from stay at least a year-and-a-half hence.[10] Giving due regard for the circumstances surrounding the statements made in the notice, I conclude that they are not in themselves so coercive or threatening as to constitute a violation of the automatic stay.

### Conclusion

For the reasons set forth above, the debtors' Motion to Show Cause for Contempt will be DENIED. A separate order consistent with this opinion will enter forthwith.

---

After the expiration of the 30 days and within 10 days thereafter, the tax collector shall record in the registry of deeds of the county or registry district where the real estate is situated a tax lien certificate signed by the tax collector or bearing his facsimile signature, setting forth the amount of the tax, a description of the real estate on which the tax is assessed and an allegation that a lien is claimed on the real estate to secure the payment of the tax, that a demand for payment of the tax has been made in accordance with this section, and that the tax remains unpaid.
36 M.R.S.A. § 942.

9. The form of the notice was supplied the Town by the Maine Municipal Association.

Appended to the debtors' brief is a document the debtors suggest would be an appropriate lien perfection notice that does not "violate the stay against collection efforts." What is appended, however, is a copy of the lien certificate municipalities record in the registry, not a *notice* to be sent to the debtors. The two are entirely different, with one meant to provide the debtors with notice that failure to pay taxes may result in a loss of property, and the *other intended to provide notice to the* world of the municipality's lien.

10. The Town concedes that it could not send the notice required by 36 M.R.S.A. § 943, a necessary prerequisite to foreclosure, without first obtaining relief from stay.