**In re Ramon ROSAS, Jr. and Lisa Rosas, Debtors/Plaintiffs,**

v.

**MONROE COUNTY TAX CLAIM BUREAU and John Doe, Defendants.**

**In re Bonnie Henricksen and Rick R. Henricksen, Debtors/Plaintiffs,**

v.

**Monroe County Tax Claim Bureau and John Doe, Defendants.**

**In re Katoloka M. Kamakanda and Marie F. Kamakanda, Debtors/Plaintiffs,**

v.

**Monroe County Tax Claim Bureau and John Doe, Defendants.**

Bankruptcy Nos. 5–00–bk–01512, 5–01–bk–03849, 5–02–bk–00438.
Adversary Nos. 5–02–ap–00105, 5–02–ap–00104, 5–02–ap–00111.

United States Bankruptcy Court, M.D. Pennsylvania.

May 14, 2004.

Brett J. Riegel, Amori and Riegel LLC, Stroudsburg, PA, for Debtors/Plaintiffs.

Peter J. Mulcahy, Phelan Hallinan & Schmieg, LLP, Philadelphia, PA, for Defendants.

### OPINION [1]

JOHN J. THOMAS, Bankruptcy Judge.

**BACKGROUND**

Each of the above referenced Plaintiffs filed identical complaints against the Mon-

---

1. Drafted with the assistance of Wendy E. Morris, Law Clerk.

roe County Tax Claim Bureau (MCTCB) and "John Doe" alleging violations of the automatic stay in their individual chapter 13 bankruptcies. The complaints identify "John Doe" as the "individual responsible for the mailing of notices from the Tax Claim Bureau." The Plaintiffs request an order directing the MCTCB to cease all collection efforts, together with actual damages, including attorneys fees, and an award of punitive damages.

A trial was held on August 5, 2003, whereby the Parties stipulated to the following facts: (1) each Plaintiff filed a chapter 13 petition; (2) each Plaintiff owns real property in Monroe County; (3) as of their respective filing dates, each Plaintiff owed property taxes to Monroe County; (4) MCTCB mailed a "Notice of Return and Claim" ("notice") to each Plaintiff pursuant to section 5860.308 of Pennsylvania's Real Estate Tax Sale Law; and (5) MCTCB was aware of the Plaintiffs' bankruptcy filings when the notices were mailed.

Ramon and Lisa Rosas filed a chapter 13 bankruptcy on May 3, 2000. Mr. Rosas testified that he and his wife found a notice from the MCTCB stuck on their front door upon returning home after spending their weekdays working out of town. Mr. Rosas was informed by a neighbor that someone in a "Sheriff's car" had placed the notice on his door while he and his wife were away. Mrs. Rosas' mother, who knew nothing about the Rosases' financial situation, witnessed the posting.

The notice stated that the Rosases had outstanding property taxes for the 1998, 1999 and 2000 tax years. The notice contained the following language in ten (10) point font in a box:

**WARNING**

IF YOU FAIL TO PAY THIS CLAIM OR FAIL TO TAKE LEGAL ACTION TO CHALLENGE THIS CLAIM, YOUR PROPERTY WILL BE SOLD WITHOUT YOUR CONSENT AS PAYMENT FOR THESE TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS MARKET VALUE. IF YOU PAY THIS CLAIM BEFORE JULY 1, 2003, YOUR PROPERTY WILL NOT BE SOLD. IF YOU PAY THIS CLAIM AFTER JULY 1, 2003, BUT BEFORE ACTUAL SALE, YOUR PROPERTY WILL NOT BE SOLD BUT WILL BE LISTED ON ADVERTISEMENTS FOR SUCH SALE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL YOUR ATTORNEY, THE TAX CLAIM BUREAU AT (570) 420–3500 OR THE COUNTY LAWYER REFERRAL SERVICE.

*See* Pl.Ex. No. 1.[2]

Unable to reach their attorney, the Rosases took a day off from their jobs on the following Monday to inquire into the situation at the County courthouse and contact their attorney.[3] Mr. Rosas' annual salary for that year, which included overtime, was over $80,000.00. Mrs. Rosas' annual salary for the same period ranged from $55,000.00 to $60,000.00. According to Mr. Rosas, he was informed by someone at the courthouse that no one should have been sent to their house with the notice because the file had a flag in the computer system that indicated the bankruptcy filing.

Mr. Rosas testified that he and his wife panicked when they saw the notice and

---

**2.** Upon comparison with the font types installed in WordPerfect® 10 (2001), the Warning's actual face appears to be Arial and a relative size of "normal."

**3.** Mr. And Mrs. Rosas utilized vacation and/or personal days which allowed them to be compensated but resulted in the loss of these otherwise paid non-work days.

were unable to reach their attorney. Mr. Rosas stated that he was distressed by the language in the warning box indicating their house was going to be sold. Mr. Rosas also testified that he and his wife were embarrassed and experienced a lot of stress because of the notice. Mr. Rosas viewed his bankruptcy as a private matter and the MCTCB's notice resulted in people getting involved in their personal business that they never wanted involved. More specifically, after the notice was posted, they were uncomfortable in discussing their financial situation with Mrs. Rosas' mother. The same can be said about the neighbors that came to their house and asked why the "Sheriff" had been there.

The Rosases received an additional notice in 2003 that contained the same language in the warning box as the previous notice. However, this notice included a statement, directly above the warning box, stating "Warning does not apply to bankruptcies".[4] *See* Pl.Ex. No. 2. Mr. Rosas was too angry and nervous to read this notice and instead relied on his wife to explain whether they needed to be concerned. Despite the fact that he was reassured by his attorney that the situation would be taken care of, he was still upset by the second notice because it contained language that his home was going to be sold.

Bonnie and Eric Henricksen filed a chapter 13 bankruptcy on September 19, 2001 so as to prevent a September 28, 2001 tax sale of their home. Mrs. Henricksen testified that she received a notice from the MCTCB by certified mail for delinquent taxes for 1999, 2000 and 2001. Although it contained the same language in the warning box that was included on the Rosases' first notice, it did not contain an additional statement that the "Warning

does not apply to bankruptcies." After her husband returned home, Mrs. Henricksen attempted to contact their attorney a couple of times. Within a few days, she became reassured once she got a response from her attorney. At the time of its receipt, Mrs. Henricksen was scared, nervous, upset and afraid that they were going to lose their home. Unlike the Rosases, the Henricksens did not miss any time from work as a result of the notice.

Katoloka and Marie Kamakanda filed a chapter 13 bankruptcy on February 6, 2002. Mr. Kamakanda testified that someone in a "Sheriff's car" knocked on his door and handed him a notice for delinquent pre-petition property taxes for 2000 and 2001. Just like the notices sent to the Rosases and the Henricksens, Mr. Kamakanda's notice contained the identical language in the warning box. Since his wife was not home, the individual stated that he would have to come back and personally give a notice to his wife. The following day, Mr. Kamakanda came home to find a "Sheriff's" sale sign posted on a tree in his yard. Mr. Kamakanda removed the sign when he came home from work and contacted his attorney. He said that his attorney alleviated his fears and told him that his house should not have been posted. The Kamakandas received an additional notice in 2003. Neither notice contained the statement that the "Warning does not apply to bankruptcies."

Although Mr. Kamakanda did not miss any work because of the notices or experience physical symptoms of distress, he testified that he was very upset by the language in the warning box that indicated that his home was going to be sold without his consent. He was also embarrassed by the sign posted on his tree because he did

---

4. Upon comparison with the font types installed in WordPerfect® 10 (2001), the statement appears to be typed in Arial face, 10 point size and a relative size of "small."

not want anyone to know that a creditor wanted to sell his home.

Flora Robeliski, the Director of the MCTCB, provided testimony on its procedures. In addition to being the person responsible for insuring that notices of delinquent taxes are sent to real property owners, she is also responsible for generating the list of property owners which are to be given notice and removing bankruptcy filers off the list of properties to be sold.

According to section 5860.308 of Pennsylvania's Real Estate Tax Sale Law, the MCTCB is required to mail notices to property owners by United States certified mail. These notices are mailed by an outsourcing company. No actual employee from the MCTCB mails notices to property owners.

Ms. Robeliski also testified that once the office is notified of a bankruptcy filing, a flag is placed on the property owner's file in its computerized system. The MCTCB sends the statutorily required notices of pre-petition tax liabilities to property owners even if it knows of their bankruptcy filing. However, it will not prepare the property for a tax sale if a bankruptcy has been filed and the owner's file is properly flagged in its computer system.

In the event that a notice cannot be delivered by the postal service, the MCTCB is required under section 5860.308 to post it on the property. These postings are performed by either employees of the MCTCB or the Monroe County Tax Assessor's Office. These individuals are not uniformed but, instead, wear casual clothing. Some Assessor's Office employees use Monroe County vehicles when posting notices. These vehicles may contain external identification indicating that it is an Assessor's Office vehicle. MCTCB employees use their own personal vehicles when posting notices. The MCTCB has not used individuals from the Sheriff's Office to post notices since the early 1990s.

Although Pennsylvania's Real Estate Tax Sale Law prescribes the exact language contained in the warning box, it can be supplemented. *See* Pa. Stat. Ann. tit. 72, § 5860.308 (West 2004). Ms. Robeliski admitted that the MCTCB decided to add the statement "Warning does not apply to bankruptcies" to the notice sent to the Rosases in 2003 based on an objection voiced by their attorney.

This matter was taken under advisement and this Court is ready to render a decision. This matter is a core proceeding under 28 U.S.C. § 157(b) and this Court's jurisdiction lies in 28 U.S.C. § 1334.

DISCUSSION

■ Upon the filing of a bankruptcy petition, Section 362(a)(6) of the Bankruptcy Code ("Code") automatically stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [title 11]." 11 U.S.C. § 362(a)(6). The language in Section 362(a)(6) is extremely broad in scope and encompasses any act to collect a pre-petition claim from a debtor.

However, Section 362(b) lists a number of acts that are exceptions from a debtor's automatic stay. In particular, Section 362(b)(9) excepts from a debtor's automatic stay "the issuance to the debtor by a governmental unit of a notice of tax deficiency." Section 362(b)(9) limits the impact of Section 362(a)(6) in specific situations concerning tax liabilities. The MCTCB argues a variety of points as to why the notices sent to the Plaintiffs fall within this exception. However, despite these arguments, the Court is convinced that MCTCB's notices extend beyond the scope of Section 362(b)(9).

The MCTCB attempts to draw parallels between the Third Circuit Court's decision

in *H & H Beverage Distributors v. Department of Revenue of the Commonwealth of Pa.* to support its position. *See* 850 F.2d 165 (3d Cir.1988). In *H & H Beverage Distr.*, the Court stated that the Commonwealth does not violate the automatic stay under Section 362(b)(9) when it audits a debtor—i.e., calculating a tax claim and issuing a notice of assessment. *See id.* at 169. It is when the Commonwealth takes steps to create a lien against a debtor's property that acts are committed that are barred by Section 362(a). *See id.* at 170. This Court concludes that *H & H Beverage Distr.* falls short of addressing the issue at hand—Whether the language of the MCTCB's notices violates a Section 362(a) prohibition against post-petition collection efforts against pre-petition tax claimants.

■ As previously stated, the automatic stay does not prevent taxing authorities from issuing notices of a tax default. *See H & H Beverage Distr., supra;* 11 U.S.C. § 362(b)(9). However, it is when a taxing authority engages in post-petition attempts to collect pre-petition tax claims that it exceeds the authority afforded under Section 362(b)(9) and violates the automatic stay. *See Headrick v. Georgia (In re Headrick)*, 203 B.R. 805, 810 (Bankr. S.D.Ga.1996).

■ The purpose of the automatic stay is to provide a debtor with a "breathing spell." *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 86 (3d Cir.1988). This "respite is not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." *Brown*, 851 F.2d at 86. The Third Circuit Court has adopted the position favored by the Ninth Circuit Court that "mere requests for payment are not barred [under 362(a)(6)] without additional evidence of coercion." *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 86

(3d Cir.1988)(citing *Morgan Guaranty Trust Co. v. American Savings and Loan Ass'n*, 804 F.2d 1487, 1491 & n. 4 (9th Cir.1986)). As part of my analysis, I must distinguish between mere requests for payment, which are devoid of coercion or harassment, and actions by a creditor that are designed to elicit payment from a debtor on a prepetition claim. *See Sechuan City, Inc. v. North Amer. Motor Inns, Inc. (In re Sechuan City)*, Inc., 96 B.R. 37, 41 (Bankr.E.D.Pa.1989)(citing *Morgan Guaranty Trust Co.*, 804 F.2d at 1491, n. 4).

■ The Court can find no fault with MCTCB's right under Section 362(b)(9) to give Plaintiffs notice of their tax deficiency. The Code does not provide how such notice is to be given. So long as it falls within the purview of Section 362(b)(9), the Code also does not specifically prohibit taxing authorities from engaging in the type of tactic required under section 5860.308 of Pennsylvania's Real Estate Tax Sale Law of posting such notices for public scrutiny. Any change in this procedure lies in the hands of the state and federal legislature and not this Court.

■ However, the Court does conclude that the notices sent to the Plaintiffs did more than merely give notice of a tax deficiency. Each notice attempted to coerce the Plaintiffs into satisfying prepetition tax liabilities by using the threat that their homes would be sold unless taxes were paid. The MCTCB's use of such language on these notices went beyond the automatic stay exemption afforded under Section 362(b)(9) and amounted to a violation of Section 362(a)(6) in the process.

The Court makes this decision against the backdrop of the recent opinion of *Jennings v. Town of Greene (In re Jennings)*, 304 B.R. 8 (Bankr.D.Me.2004). In *Jennings*, the bankruptcy court was confronted with a Maine tax collector's notice pro-

vision that is facially similar to the one before this Court. *See id.* at 9–10. In truncated form, the notice stated: "IMPORTANT: Do not disregard this notice. You will lose your property unless you pay your 2002 property taxes, interest and costs...." *Id.* In addressing the issue of whether the notice amounted to coercive, threatening or harassing conduct on the part of the taxing authority and a violation of the automatic stay, the court chose to interpret the notice to mean that the debtors' property "might" be sold. *See id.* at 13. The court further reasoned that a cursory inquiry by the debtors to either the taxing authority or their attorney should have revealed that the warning was standard fare and that it was but the first step in a long process of selling the property. *See id.*

Notwithstanding the reasoning outlined in *Jennings*, it is not binding on this Court. The warning included on the notices at issue contains the language that "IF YOU FAIL TO PAY THIS CLAIM OR FAIL TO TAKE LEGAL ACTION TO CHALLENGE THIS CLAIM, YOUR PROPERTY WILL BE SOLD WITHOUT YOUR CONSENT." Despite the MCTCB's argument that although it never actually took any steps to sell the properties and that the properties "could" be sold for failure to pay, each notice contained a clear threat that failure to pay the pre-petition taxes "will" result in the properties being sold. These notices did not communicate that the properties "could" be sold if the pre-petition taxes were not

paid or, if one relies on *Jennings*, that they "might" be sold. There is a clear difference between the plain meaning of the words "could", "might" and "will." [5] They communicate MCTCB's threat of selling the Debtors' property without their consent if the claims were not paid by a certain date. MCTCB's notices can "reasonably be deemed tantamount to a threat" of immediate action and the Bureau went far beyond the conduct which is permitted under Section 362(b)(9). *Accord Diamond v. Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224, 227 (1st Cir. 2003).

Lastly, the MCTCB's argument that there was no conflict between Section 362(a) and Pennsylvania's section 5860.308 fails. Despite the fact that the MCTCB's conduct may have been mandated under Pennsylvania law, it does not shield it from a violation of federal laws. *Accord Kane v. Town of Harpswell* (In re Kane), 248 B.R. 216, 224 (1st Cir. BAP 2000)(Court held that regardless of the procedural requirements imposed by Maine statutes concerning notice of a tax lien mortgage, the end effect resulted in a violation of the automatic stay).

## DAMAGES

The Plaintiffs are requesting damages in an amount either determined by the Court or equal to the sum total of the pre-petition tax years at issue and attorney fees. They also argue that punitive damages are warranted based on the extreme and out-

---

**5.** *Merriam–Webster Online Dictionary* defines "could", "might" and "will" as:

could: [A]s an alternative to can suggesting less force or certainty or as a polite form in the present.

might: 1a *archaic:* have the ability to b: have permission to ... c—used to indicate possibility or probability ... sometimes used interchangeably with can....

will: 2—used to express frequent, customary, or habitual action or natural tendency or disposition ... 7—used to express a command, exhortation, or injunction.

*Merriam–Webster Online Dictionary,* "could", "might", and "will" **http://www.merriam-webster**.com (19 Feb. 2004)

rageous nature of the MCTCB's post-petition collection efforts.

■■■ Section 362(h) allows individuals injured by a creditor's willful violation of the automatic stay to "recover actual damages, including costs and attorney fees, and, in appropriate circumstances, may recover punitive damages." *See* 11 U.S.C. § 362(h). A creditor willfully violates the automatic stay when it "violates [it] with knowledge that the bankruptcy petition was filed." *Lansdale Family Restaurants v. Weis Food Service* (In re Lansdale Family Restaurants), 977 F.2d 826, 829 (3d Cir.1992); *see also Cuffee v. Atlantic Bus. & Community Corp. (In re Atlantic Bus. & Community Corp.)*, 901 F.2d 325, 329 (3d Cir.1990). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *Id.*

There is no dispute that MCTCB knew that the Plaintiffs filed for bankruptcy relief. It is also clear that MCTCB intentionally caused the notices, which contained the threatening language, to be mailed to the Plaintiffs despite this knowledge. This conduct amounts to a willful violation of the Plaintiffs' automatic stay. Accordingly, the Plaintiffs are entitled to actual damages, including costs and attorney fees, caused by MCTCB's willful violation of the automatic stay.

■■■ Once having determined that a violation of the automatic stay has occurred, it is incumbent on the court to determine what damages, if any, should be awarded to the Plaintiffs.

Section 362(h) reads as follows:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

I have heretofore held that actual injury is a condition precedent to the award of damages, including attorney's fees and punitive damages. *In re Micro Marketing International, Inc.*, 150 B.R. 573 (Bankr. M.D.Pa.1992). Notwithstanding, I have concluded, in a previous case, that emotional distress, such as humiliation and embarrassment, can support an award of damages under 11 U.S.C. § 362(h). *Solfanelli v. Meridian Bank (In re Solfanelli)*, 206 B.R. 699, 703 (Bankr.M.D.Pa.1996), *Affirmed in Part, Reversed in Part by In re Solfanelli*, 230 B.R. 54,(M.D.Pa.1999), *Judgment Affirmed and Remanded by Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197,(3rd Cir.2000). This was true even if the damages were merely nominal. *Id.*

■■■ Insofar as financial damages, only Mr. Rosas' testimony presented evidence of his and his wife's economic loss. Accordingly, the Rosases should be compensated for the day of work they both missed in order to deal with the notice. Based on the uncontradicted testimony of their annual salaries, the Court determines that Mr. Rosas has actual damages of $306.51 and Mrs. Rosas' actual damages are $210.73.[6]

**6.** Actual damages are calculated as:

*Mr. Rosas:*
Annual Working Days = 365(Total days a Year)–52(Sundays a Year)–52(Saturdays a Year) = 261
Daily Salary = $80,000 (Minimum Annual Salary) ÷ 261(Annual Working Days) = $306.51

*Mrs. Rosas:*
Annual Working Days = 365 (Total days a Year)–52(Sundays a Year)–52(Saturdays a Year) = 261
Daily Salary = $55,000 (Minimum Annual Salary) ÷ 261 (Annual Working Days) = $210.73

■ None of the other Plaintiffs testified to any economic loss associated with MCTCB's violation. Notwithstanding this shortcoming, the record does contain evidence that the Plaintiffs suffered various forms of emotional distress as a result of the violation. As in *Solfanelli,* I am satisfied to award nominal damages of $1.00 in favor of each Plaintiff and against MCTCB. In doing so, I award attorneys' fees in advancing this litigation and direct Debtors' counsel to file an itemization of those fees within thirty days.

■ Regarding the issue of punitive damages, Section 106(a)(3) of the Code explicitly prohibits an award of punitive damages against any governmental unit. *See* 11 U.S.C. § 106(a)(3). The MCTCB qualifies as a governmental unit under the Code. *See* 11 U.S.C. § 101(27). The Plaintiffs are therefore unable to recover punitive damages as a result of the MCTCB's automatic stay violation. *Accord Flynn,* 185 B.R. at 93.

## "JOHN DOE"

■ Plaintiffs' complaints allege that "John Doe" is the "individual responsible for the mailing of notices from the Tax Claim Bureau." Despite the fact that there are no federal statutes or procedural rules for the use of "John Doe" defendants in federal court proceedings, the practice has nonetheless been allowed. *See e.g. Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Although the use of "John Doe" defendants may cause problems in cases based on diversity of jurisdiction, the same is not evident in causes of actions based on federal question jurisdiction such as bankruptcy proceedings. *See Bair v. Krug,* 853 F.2d 672, 674 n. 4 (9th Cir.1988); 28 U.S.C. § 1334.

■ However, a complaint asserting claims against a "John Doe" defendant must be amended to substitute the name of the real party "as soon as the identity is known or reasonably should have been known or in any event, before the close of discovery." *See Rodriguez v. City of Passaic,* 730 F.Supp. 1314, n. 7 (D.N.J.1990). "If it appears that reasonable steps are not taken to learn the identity of the true party and add him as a defendant, claims against unknown defendants should be dismissed." *See Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 36 (E.D.Pa.1990)("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

As of the trial date, none of the Plaintiffs had amended their complaints and properly identified "John Doe." This Court cannot hold "John Doe" liable under Section 362. Each cause of action against "John Doe" is dismissed.

An Order will follow.

## ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that:

1. Monroe County Tax Claim Bureau is directed to cease all collection efforts on Plaintiffs' pre-petition liabilities that violate 11 U.S.C. § 362.

2. Monroe County Tax Claim Bureau is ordered to pay Plaintiff, Ramon Rosas, $306.51 in actual damages.

3. Monroe County Tax Claim Bureau is ordered to pay Plaintiff, Lisa Rosas, $210.73 in actual damages.

4. Monroe County Tax Claim Bureau is ordered to pay Plaintiffs, Bonnie Henricksen, Rick R. Henricksen, Katoloka M. Kamakanda, and Marie F. Kamakanda, nominal damages of $1.00.

5. Plaintiffs' attorneys file and serve on the Monroe County Tax Claim Bureau an

itemized application for attorneys' fees and costs arising out of the automatic stay violation within 30 days from the date of this Order. Objections to any application must be filed within 20 days thereafter.

6. Plaintiffs' causes of action against Defendant "John Doe" are dismissed.